UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. No. 04-30177-KPN

JOEL PENTLARGE,

    Plaintiff,

vs.

ROBERT MURPHY,
KATHLEEN DENNEHY,
THE MASSACHUSETTS DEPARTMENT OF CORRECTION,
NATALYA PUSHKINA, AND
DEBORAH O'DONNELL,

    Defendants.

## SUPPLEMENTAL COMPLAINT

109. The plaintiff re-alleges and incorporates all the allegations contained in the 108 paragraphs of the original complaint and the amended complaint both previously filed in this action.

## STATEMENT OF SUPPLEMENTAL FACTS

### COUNT VIII DENIAL OF FUNERAL FURLOUGH

110. On September 21, 2004 Daniel Pentlarge, the plaintiff's brother, died.

111. On September 22, 2004 the plaintiff made a written request to attend the funeral of his brother at the First Parish Unitarian Church on Massachusetts Avenue in Arlington, Massachusetts. The funeral was scheduled to be held on September 25.

112. On September 23, 2004 the defendant Superintendent Robert Murphy denied the plaintiff's request to attend the funeral. Superintendent Murphy stated that it is policy not to allow inmates to attend funerals.

113. The plaintiff filed an emergency grievance seeking to reverse the denial of his request to attend the funeral. The grievance was denied. The plaintiff filed an appeal on

the denial of the grievance. The appeal under the regulations of the Department of Correction is decided by the Superintendent. The grievance officer confirmed to the plaintiff that the Superintendent had received the grievance appeal as of noon time on September 24, 2004.

114. The Superintendent denied the grievance appeal either directly or by failure to act on it in time for the plaintiff to attend the funeral.

115. The Massachusetts Department of Correction has promulgated regulations for furloughs which apply to all "state correctional facilites." 103 CMR 463.03. Those regulations provide that an inmate may be authorized to receive an "emergency furlough under escort" to "attend the funeral of a relative." 103 CMR 463.07(2)(a) and 463.11. A "Relative" is defined as including the inmate's brother. 103 CMR 463.06. (The plaintiff will attach a copy of 103 CMR 463, if the defendant Librarian Natalya Pushkina will make the copy.)

116. The plaintiff's only criminal record is for the five counts of statutory rape for having consensual sex with four fifteen year old boys. The plaintiff has no history of violence in or out of prison. The plaintiff is 54 years old. The plaintiff has never attempted to escape. In July 2004 the plaintiff concluded a five week jury trial, in which the plaintiff was allowed in the courtroom without handcuffs or leg irons or any other restraint, guarded often by a single unarmed court officer with numerous friends, family members and members of the general public present

in the same room.

117. On September 7, 2004 the plaintiff was taken on an emergency furlough under escort by two correctional officers to visit his brother, who was then in a coma, at the Mt. Auburn Hospital in Cambridge, Massachusetts. The plaintiff was fully cooperative with the officers, who were themselves the soul of consideration under the circumstances.

118. A memorial service for the plaintiff's brother is being scheduled for Columbus Day weekend in the Wakefield Unitarian Church in Wakefield, Massachusetts.


COUNT IX INTERFERENCE WITH MAIL

119. On September 18, 2004 the plaintiff placed in the mail letters to Superintendent Murphy, Commissioner Dennehy, and Attorney General Reilly by certified mail return receipt requested. These letters each had enclosed a copy of the complaint in this action and the notice of law suit and consent for waiver of service of process provided for by the Federal Rules of Civil Procedure, Rule 4.

120. On September 21, 2004 the plaintiff placed in the mail some six or seven letters to Superintendent Murphy, Commissioner Dennehy, Attorney General Reilly, Natalya Pushkina and Deborah O'Donnell containing copies of the proposed amendment to the complaint in this action.

121. All of the letters mailed by the plaintiff had the plaintiff's return address typed on the envevelopes as:

```
Joel Pentlarge
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324
```

122. Before placing each letter in the mail box the "mail officer" inspected the return address on each envelope and approved it. (This procedure was implemented shortly after September 11, 2001, after the mailing of letters containing Anthrax, and the mailing of letters containing white powder from a prisoner at Walpole.)

123. On September 21 all of the letters were returned to the plaintiff with an unsigned note: "Return wrong Return Address Pentlarge." (Attached is the note.)

*[Handwritten note: "Return wrong Return Address Pentlarge"]*

124. The General Laws of Massachusetts, c. 123A, § 2 specifically provides that the facility in which the plaintiff is detained shall be called "the Nemansket Correctional Center."

125. The plaintiff has received numerous pieces of mail addressed to him at the "Nemansket Correctional Center," including letters from this court.

126. During the week of September 13, 2004 the plaintiff wrote to Barbara Fell-Johnson, the Librarian of the Hampshire County Law Library requesting that she send him copies of five cases which are not available in the prisoners law library at the Nemnsket Correctional Center.

127. On September 20, 2004 Ms. Fell-Johnson e-mailed

copies of the five cases from Westlaw together with a cover note to the plaintiff's e-mail address: JoelPent@comcast.net. (Attached as Exhibit E are the first two pages of this e-mail.)

128. The entire e-mail was printed at the plaintiff's office at 10 Prospect Street in Ware and mailed to the plaintiff on September 21, 2004.

129. On September 24, 2004 the plaintiff received the first six pages of the e-mail with a notice that the balance of the case copies were "Disapproved Correspondence/Publication and Contraband" with the explanation "photocopies (5 pages maximum)" and check marked on a list of "Reason(s) for Disapproval/Non-Delivery": "Item(s) not authorized by 103 CMR 403, Inmate Property Policy." (Attached as Exhibit F is a copy of the notice of Disapproved Correspondence.)

130. There is no property regulation or any other regulation which prohibits an inmate from receiving or retaining copies of legal case decisions. The property regulations make specific provision for inmates to retain legal paperwork. 103 CMR 403. Nor are there any promulgated regulations which limit the amount of photocopied or reproduced materials which an inmate may receive in any one letter.

131. The last letter which the plaintiff's brother Daniel sent to the plaintiff, before Daniel died, contained more than 5 pages of e-mailed material having to do with the poet Nikki Giovanni. These additional pages of e-mailed material were contrabanded.

132. The Nemansket Correctional Center has a policy that if there are any outstanding contra band issues, an inmate can

not receive any new non-contraband property, such as the typewriter and ribbons with which this Supplemental Complaint is being typed. On September 9, 2004 in order to receive this typewriter and ribbons, the plaintiff had to agree to have the contrabanded e-mail from his brother destroyed.

CAUSES OF ACTION

133. The refusal of the defendants Murphy, Dennehy and the Massachusetts Department of Correction to allow the plaintiff to go to any of the funeral services for his brother violates the plaintiff's First Amendment rights to freedom of religion, speech and association, his Fourteenth Amendment rights to the least restrictive alternative and to be treated more considerately than a prisoner, and entitles the plaintiff to damages and injunctive relief pursuant to 42 U.S.C. §§ 1983.

134. The policy of the defendants Murphy, Dennehy and the D.O.C. of never allowing any prisoner or resident to attend a funeral violates the plain language of 103 CMR 463. The refusal of the defendant Murphy to authorize a funeral furlough to the plaintiff was arbitrary and capricious and an abuse of discretion. The plaintiff is entitled to relief reversing the decision of the Superintendent and declaring that the policy of the Superintendent, Commissioner and D.O.C. is in violation of 103 CMR 463, and enjoining the defendants from failing to allow the plaintiff a funeral furlough to attend any additional funeral services that may be held for the plaintiff's brother, as provided by M.G.L. c. 30A, and c. 231A.

135. The interference with the plaintiff's incoming and outgoing mail violates the plaintiff's First Amendment rights to freedom of speech and to seek redress of grievances, and his Fourteenth Amendment right to access to the courts, and entitles the plaintiff to damages and injunctive relief under 42 U.S.C. § 1983.

136. The interference with the plaintiff's incoming and outgoing mail also violates 103 CMR 481.08(3) which provides that outgoing mail will be delivered to the post office within 24 hours of collection and incoming mail shall be delivered to inmates within 24 hours of collection. The plaintiff filed a grievance on this issue and an appeal to the defendant Superintendent Murphy, who approved the appeal, "although the MTC will continue to follow current institution procedures. Mail requiring processing by the Treasurer's Office will be processed during business hours of Monday through Friday, excluding holidays." (A copy of the grievance appeal and decision is attached as Exhibit G of this Complaint.) The plaintiff is entitled to declaratory and injunctive relief enforcing mail regulations, pursuant to M.G.L. c. 231A, and to the extent that cyrptic grievance appeal decision is consistent with those regulations the plaintiff is entitled to enforce that decision pursuant to G.L. c. 30A for injunctive relief in the nature of mandamus.

137. The interference with the plaintiff's mail violates the plaintiff's right to substantive due process of law protected by the Fourteenth Amendment, because it is not the least restrictive alternative and does not treat the plaintiff more considerately than prisoners are treated.

ADDITIONAL RELIEF REQUESTED

1. The court issue a short of order of notice for a hearing on the plaintiff's request for injunction ordering the defendants to grant the plaintiff an emergency escorted furlough to attend funeral services for his brother to be held at the Wakefield Unitarian Church.

And for that hearing to be scheduled on or before October 4, 2004.

2. The court grant a preliminary and permanent injunction ordering the defenants Murphy, Dennehy and the D.O.C. from failing to:

a) grant the plaintiff an emergency escorted furlough to attend the funeral services of his brother to be held at the Wakefield Unitarian Church,

b) deliver all outgoing mail of the plaintiff so long as it contains a return address containing his name, and the street address, city and state, and if the plaintiff so chooses any legally designated description of the facility in which the plaintiff is confined, including the "Nemansket Correctional Center to the post office;

c) deliver all incoming mail within 24 hours to the plaintiff regardless of the number of pages any letter contains and regardless of whether any part of the letter is photocopied or copied in any other way.

Joel Pentlarge, Plaintiff

*[signature: Joel Pentlarge]*
Joel Pentlarge, Pro Se
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324
Telephone (413) 967-3453

Verification

    I, Joel Pentlarge, state under the pains and penalties of perjury that all of the factual statements contained in the foregoing Supplemental Complaint are true.

September 26, 2004

*[signature: Joel Pentlarge]*
Joel Pentlarge

**JoelPent@comcast.net**

| | |
|---|---|
| From: | "Barbara Fell-Johnson" <felljohnson@hotmail.com> |
| To: | <joelpent@comcast.net> |
| Sent: | Monday, September 20, 2004 1:13 PM |
| Subject: | Cases |

Dear Joel:

This is to let you know that the 5 cases you requested were emailed to you from Westlaw. Please read the disclaimer below.

Barbara

For your convenience, this document is being sent from a reputable electronic database of legal information. As this database has not been developed by the Trial Court Law Libraries, we are unable to vouch for its accuracy or currency and the information is only as accurate and as current as the database itself. This information is being provided on an "as is, as available" basis. The Mass. Trial Court Law Libraries make no representation as to the validity, accuracy or reliability of the information sent from this electronic database and it is being sent for informational purposes only.
    If this is a recent opinion (not yet been printed in a bound volume), it is subject to revision, substitution or removal before the bound volume is published.
    If this is an opinion that has been printed in a bound volume, it may later be vacated, overruled or reversed on appeal.

    The Trial Court Law Libraries and the database provider expressly disclaim all warranties, including the warranties of merchantability, fitness for a particular purpose and non-infringement. The Trial Court Law Libraries and the database provider disclaim all responsibility for any loss, injury, claim, liability, or damage of any kind resulting from, arising out of or any way related to (a) any errors in or omissions from this web site and the content, including but not limited to technical inaccuracies and typographical errors, (b) your use of this web site or the content and/or, c) errors in transmission of this information.

<u>JoelPent@comcast.net</u>

From: "Barbara Fell-Johnson" <felljohnson@hotmail.com>
To: <joelpent@comcast.net>
Sent: Tuesday, September 21, 2004 2:30 PM
Subject: 31 Ca 3d 815

31 Cal.3d 815, 647 P.2d 93, 183 Cal.Rptr. 817
View National Reporter System version

THE PEOPLE, Plaintiff and Respondent,
v.
CARL DAVID HOGAN, Defendant and Appellant. In re CARL DAVID HOGAN on Habeas Corpus
Crim. Nos. 20943, 21582.
Supreme Court of California
Jul 1, 1982.

SUMMARY

Defendant was charged with the first degree murders of a woman and her four-year-old son, and with assault with intent to commit murder on the woman's infant son. As a special circumstance, it was alleged that defendant was personally present during the commission of the two murders, that he intended to cause the deaths and that he thereby committed more than one offense of murder. At trial, incriminating statements made by defendant to police interrogators were admitted in evidence, as was the expert testimony of a criminalist as to the nature of blood stains found on defendant's clothing at the time of his arrest. A jury found defendant guilty as charged and also found the special circumstance allegation to be true. The penalty was thereafter fixed at death. (Superior Court of Kern County, No. 19448, Marvin E. Ferguson, Judge.)

The Supreme Court reversed the judgment and denied a petition for a writ of habeas corpus as moot. The court held that the admission in evidence of defendant's statements to police was reversible error entitling defendant to a new trial, since the record indicated police had planted in defendant's mind the suspicion that he was mentally ill, since the statements at issue were preceded by admitted police deception regarding the existence of conclusive eyewitness proof of his guilt, and since the statements were a series of emotional outbursts and not a reliable product of a rational intellect. Thus, the prosecution did not sustain its burden of proving beyond a reasonable doubt that the statements were voluntary. The court also held that the prosecution failed to *816 show beyond a reasonable doubt that the error did not contribute to the verdict. As to the testimony of the criminalist as to whether certain blood stains were the result of splatters or were caused by mere contact with a bloody object, the court held that his qualifications as an expert on such subject had not been established under Evid. Code, § 720, noting that his qualifications amounted only to having observed many blood stains. (Opinion by Bird, C. J., with Broussard, J., concurring. Separate concurring opinion by Kaus, J., with Newman, J., concurring. Separate dissenting opinion by Richardson, J., with Mosk, J.,

9/21/04

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### DISAPPROVED CORRESPONDENCE/PUBLICATION AND CONTRABAND NOTICE TO INMATE

**EXHIBIT** /

### Intended Recipient

| Name of Recipient | Inmate Number (if applicable) | Institution |
|---|---|---|
| *[handwritten]* | *[handwritten]* | *[handwritten]* |

| Address - Street or P.O. Box | City | State and Zip Code |
|---|---|---|
| *[handwritten]* | | |

### Sender

| Name of Sender | Material Sent (name and date of correspondence/publication) | Institution (if applicable) |
|---|---|---|
| *[handwritten]* | | |

| Address - Street or P.O. Box | City | State and Zip Code |
|---|---|---|
| *[handwritten]* | *[handwritten]* | *[handwritten]* |

### Non-Delivery Information

| Date Item Postmarked or Date Item Received | Item Rejected for Delivery (letter, package, magazine, book, etc.) |
|---|---|
| *[handwritten]* | *[handwritten]* |

### Reason(s) for Disapproval/Non-Delivery

Item(s) fall as a whole or in significant part into any one of the following categories:

_____ Transmittal of plans for, or the introduction of, contraband into the prison
_____ Plans for criminal activity or any activity which violates any departmental or institutional rule, regulation, order or policy
_____ Written in code
_____ Threatening or harassing correspondence including the sending of sexually explicit material to unwilling recipients
_____ Correspondence containing unsanitary or hazardous material (i.e., feces, insects, dirt, debris)
_____ Extortion demands
_____ Sending cash, drugs, jewelry or other contraband outside the prison
_____ The recipient has previously requested not to receive correspondence from the inmate pursuant to 103 CMR 481
_____ Improper or no return address
_____ Depicts or describes procedures for the construction of weapons, ammunition, bombs, or incendiary devices
_____ Depicts, describes or encourages methods of escape from correctional facilities or contains blueprints, drawings or similar descriptions of any correctional institution within the Commonwealth.
_____ Depicts or describes procedures for the brewing of alcoholic beverage(s), or the manufacture of drugs
_____ Depicts, describes or encourages activities that may lead to the use of physical violence or group disruption
_____ Encourages or instructs in the commission of criminal activity
_✓_ Sexually explicit pictoral material or material that features nudity. *Per 103 CMR 481.15(3)(c) it is the Deputy Superintendent's decision as to whether or not a publication should be excluded.
_____ Item(s) not authorized by 103 CMR 403, Inmate Property Policy.

| Signature of Institution Staff Member | Date Signed |
|---|---|
| *[handwritten]* | *[handwritten]* |

**\*\* IMPORTANT \*\* PLEASE NOTE: IF YOU DISPUTE THIS DECISION, YOU HAVE THE RIGHT TO APPEAL TO THE SUPERINTENDENT BY SUBMISSION OF A WRITTEN APPEAL WITHIN 7 DAYS OF RECEIPT OF THIS NOTICE.**

*THIS ALSO SERVES AS YOUR INITIAL CONTRABAND NOTIFICATION UNDER 103 CMR 403.14 FOR THE ABOVE-REFERENCED ITEM(S). PLEASE COMPLETE THE SECOND PAGE OF THIS FORM AND ADVISE THE INSTITUTION PROPERTY OFFICER OF YOUR CHOSEN METHOD OF DISPOSAL.*

Distribution:    Original - Deputy Superintendent    Copy - Property Officer    Copy - Inmate

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT


EXHIBIT G

**Name** PENTLARGE JOEL

**Institution** MASS. TREATMENT CENTER

**Number** M85594    **Housing** D1

**Appeal Date** 21-APR-2004    **Date Of Grievance** 05-APR-2004

**Appeal Received Date** 22-APR-2004

**Appeal Remedy Requested** 103 CMR 481.08 (3) provides that outgoing mail shall be delivered to the post office and incoming mail shall be delivered to the inmates within 24 hours of collection. I have documented that it took five days for this institution to mail out a letter to my attorney. I believe this delay to be a common occurence caused by the delays in the treasurer's office in processing charge slips for postage. Larger letters cannot be mailed without a charge slip. MCI Norfolk was able to have procedures to process and return charge slips for postage back to the prisoner on the same day. There is no reason why the MTC can not do this and be in compliance with the regulations. I would appreciate it if you would enforce the regulation and ensure that mail is sent out promptly.

send out and deliver all mail within twenty- four hours of collection as required by 103 CMR 481.08 (3), including processing mail charge slips for postage the same day.

**Staff Recipient** Edington Glenn E  CO II

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 22-APR-2004    **Decision Date** 02-JUN-2004    **Decision** Approved

**Decision By** Murphy Robert F  SUPERINTENDENT

**Reasons** Appeal approved, although MTC will continue to follow current institution procedures. Mail requiring processing by the Treasurer's Office will be processed during business hours of Monday through Friday, excluding holidays.

**Signature**    **Date** 6/2/04

---

## INMATE RECEIPT

**Inmate's Name** PENTLARGE JOEL

**Institution** MASS. TREATMENT CENTER

**Number** M85594

**Appeal Received Date** 22-APR-2004

**Staff Recipient** Edington Glenn E  CO II

**Superintendent's Signature**