UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. No. 04-30177

JOEL PENTLARGE,

    Plaintiff,

vs.

ROBERT MURPHY,
KATHLEEN DENNEHY,
THE MASSACHUSETTS DEPARTMENT OF CORRECTION,
NATALYA PUSHKINA, AND
DEOBORAH O'DONNELL,

    Defendants.

MEMORANDUM IN SUPPORT OF THE
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUCTION

    The plaintiff Joel Pentlarge has filed a motion for a preliminary injunction requesting some twelve different kinds of relief.  Each of the requests will be discussed separately.

STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

    Four criteria govern the decision to grant or deny a preliminary injunction. Langlois v. Abington Housing Authority, 207 F.3d 43, 47 (1st Cir. 2000).  The district court must consider:

    (1) the likelihood of success on the merits;

    (2) the potential for irreparable harm if the if the injunction is denied;

    (3) the balance of relevant impostions, i.e., the hardship to the nonmovant, the defendants, if enjoined as contrasted with the hardship to the movant, the plaintiff, if no injunction issues; and

    (4) the effect (if any) of the court's ruling on the public interest.  Wagner v. City of Holyoke, 100 F.Supp.2d 78, 82

(D.Mass. 2000, Ponsor, J.) citing <u>Ross-Simmons of Warwick, Inc. v. Baccarat</u>, 102 F.3d 12, 15 (1st Cir. 1996). Where the alleged injury is a threat to First Amendmetn interests, the finding of irreparable injury is often tied to the likelihood of success on the merits, because the loss of First Amendment freedoms unquestionably constitutes irreparable harm. <u>Wagner</u>, <u>supra</u>.

## 1. REQUEST TO ATTEND BROTHER'S FUNERAL

Facts

The plaintiff Joel Pentlarge pled guilty to five counts of statutory rape on four fifteen year old boys in the Hampshire Superior Court on July 31, 2000 and was sentenced to three to four years of prison concurrently on four of the counts and life time probation on the fifth count. (Verified Complaint, ¶ 8.) The plaintiff served his prison sentence first at M.C.I. Concord for four months and the remaining three years at M.C.I. Norfolk, a level four medium security prison. (Complaint, ¶ 9). Shortly before the plaintiff concluded his prison sentence the Hampshire County District Attorney filed a petition to civilly commit the plaintiff as a sexually dangerous person to the Nemansket Correctional Center for a day to life as provided by M.G.L. c. 123A. (Complaint, ¶¶ 10 and 12.) The plaintiff has been held at the Nemansket Correctional Center since December 24, 2003, and was committed after a jury trial in the Hampshire Superior Court on July 19, 2004. (Complaint, ¶¶ 11 and 12.)

On September 21, 2004, the plaintiff's brother, Daniel Pentlarge, died. (Verified Supplemental Complaint, ¶ 110.)

of prison, no record of attempting to escape, and the plaintiff is 54 years old. (Supp. Comp. ¶ 116.)

An additional funeral service has been scheduled for Daniel Pentlarge at the Unitarian Universalist Church of Wakefield at 326 Main Street, Wakefield, MA at 2:00 P.M. Sunday, November 7, 2004. The plaintiff has requested an escorted furlough to attend this service, but has received no response from the Superintendent. (See the Supplemental Affidavit in Support of Motion for Preliminary Injunction, Suppl. Compl. ¶ 118, and the attached Request to Attend Funeral Service dated October 25, 2004.) 1/

Argument

The defendant Massachusetts Department of Correction has promulgated regulations for furloughs which apply to all "state correctional facilities." 103 CMR 463.03. (A copy of the relevant portions of 103 CMR 463 is attached.) Those regulations provide that an inmate be authorized to receive an "emergency furlough under escort" to "attend the funeral of a relative." 103 CMR 463.07(2)(a) and 463.11. A "Relative" is defined as including the inmate's brother. 103 CMR 463.06.

Regulations are interpreted in the same manner as a statute according to the traditional rules of contruction, and words of a regulation are accorded their usual and ordinary meaning. Warcewicz v. Dept. of Env. Protection, 410 Mass. 548, 550, 574 N.E.2d 364, 365 (1991). The ordinary meaning of funeral is a church service attended by family and friends in memory of one who has died. A "private viewing" of the remains is not the ordinary meaning of "funeral," nor is it remotely equivalent.

---

1. Factual averments made of personal knowledge in a verified complaint are the equivalent of an affidavit. Sheinkopf v. Stone, 927 F.2d 1259, 1262-63 (1st Cir. 1991).

3

A funeral was scheduled for Daniel Pentlarge on September 25, 2004 at the First Parish Unitarian Church in Arlington, Massachusetts. (Supp. Comp. ¶ 111.) The plaintiff requested to attend the funeral by way of an emergency furlough under escort. (Supp. Comp. ¶¶ 111-115.) The defendant Superintendent Robert Murphy denied the request, stating that it is policy not to allow inmates to attend funerals. (Supp. Comp. ¶ 112.) The plaintiff filed a grievance and appeal of the Superintendent's decision. The grievance was denied and the Superintendent denied the appeal. (Supp. Comp. ¶¶ 113 and 114, attached are copies of the denials.) The Superintendent's decision stated "Resident was advised to request private viewing of brother's remains at the funeral home. He declined to submit a request for a private viewing. The Department views the private viewing as comparable to a funeral." (See attached decision.)

On September 7, 2004 the plaintiff was taken on emergency furlough under escort by two correctional officers to visit his brother, who was then in a coma, at the Mount Auburn Hospital in Cambridge. (Supp. Comp. ¶ 117.) In June and July the plaintiff was allowed to participate in his commitment trial attending court without hand cuffs or leg irons or any other restraint, often guarded by a single unarmed court officer, while numerous family, friends and members of the general public were also present in the court room. (Supp. Comp. ¶116.) The plaintiff's only criminal record is the five counts of statutory rape for having consensual sex with four fifteen year old boys. The plaintiff has no history of violence in or out

A funeral held in a church is religious service, and frequently it ~~is the~~ last opportunity for those who knew and loved the deceased to come together and share their memories of the deceased and their grief. While the defendants clearly have the discretion to grant or deny requests for these escorted furloughs, the defendants cannot arbitrarily interpret the regulations in such way that they are negated. <u>Haverty v. Commissioner of Correction</u>, 437 Mass. 737, 758, 776 N.E.2d 973, 988 (2002). The regulations of the Department of Correction have the force of law, and the DOC must obey its own regulations. <u>Id</u>. In the <u>Haverty</u> case the regulations in question gave the DOC discretion to put inmates into administrative segregation. The DOC ignored these regulations and put large numbers of inmates into segregation without following the regulations. The <u>Haverty</u> specifically held that the affected inmates were entitled to enforcement of the regulations.

Under the defendant's own regulations the plaintiff is entitled to an escorted furlough to attend the funeral of his brother. Attending a funeral is a First Amendment right of freedom of religion and association. While this First Amendment right can be restricted to achieve a compelling state interest, such as security, the restriction must be the least restrictive alternative. See <u>Procunier v. Martinez</u>, 416 U.S 396, 413-414, 40 L.Ed.2d 224 (1974), where the Supreme Court held that any restriction of a prisoner's First Amendment to send and receive mail that furthers an important substantial interest of the penal administration "will nevertheless be invalid if its sweep is unnecessarily broad." As the Supreme Court later observed

this is a "least restrictive alternative analysis." Thornburg v. Abbott, 490 U.S. 401, 410, 104 L.Ed.2d 459, 471 (1989). Least restrictive alternative is the standard which applies to civilly committed persons here at the Nemansket Correctional Center. King v. Greenblatt, 53 F.Supp.2d 117, 123 (D.Mass. 1999) which is consistent with Youngberg v. Romeo, 457 U.S. 307, 73 L.Ed.2d 28 (1982) where the Court said that "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id. at U.S. 321-322. In the present case the regulations of the DOC allow prisoners to have escorted furloughs to funerals. The plaintiff is not asking to be treated more considerately than a prisoner would be, he is only asking that he be treated as considerately as the regulation would allow a prisoner to be. The plaintiff accepts an escorted furlough as the least restrictive alternative, which still achieves the state's interest in security, while preserving his First Amendment right to go to the funeral.

    The plaintiff is likely to succeed on the merits either enforcing the clear language of the DOC's own furlough regulations or enforcing his First Amendment rights by the least restrictive alternative of following the DOC's regulations for escorted furloughs. Attending a funeral is a First Amendment right, lossing that right is an irreparable injury. Wagner, supra, at 100 F.Supp.2d 82. It is a unique opportunity to share grief and memories of the deceased. While there is some hardship

to the defendants, in that they will bear the cost of assigning two correctional officers to transport the plaintiff, it is a cost that the DOC has undertaken by issuing its furlough regulations, and it is a cost that is easily calculated, and can be reimbursed should court ultimately rule in the defendant's favor on this issue. The hardship to the plaintiff if he is denied the opportunity to attend his brother's funeral is irreparable. The public interest is always served when constitutional rights are upheld and regulations are enforced.

The plaintiff therefore requests that the court enter a preliminary injunction, enjoining the defendants Superintendent Murphy and Commissioner Dennehy from failing to provide the plaintiff with an escorted furlough to attend the funeral of his brother Daniel Pentlarge at the Unitarian Universalist Church at 326 Main Street in Wakefield, Massachusetts, at 2:00 P.M. on Sunday November 7, 2004.

Respectfully submitted,

Joel Pentlarge, Plaintiff

Joel Pentlarge, Pro se
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324

November 3, 2004

October 25, 2004

Joel Pentlarge
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324

Superintendent Murphy
c/o CPO Scott Tedor

Re: Request to Attend Funeral Service on November 7, 2004

Dear Superintendent Murphy:

    I have receeved notice that an additional funeral service is going to be held for my brother Daniel Pentlarge, who died on September 21, 2004 at the Mt. Auburn Hospital in Cambridge. The service will be held on Sunday, November 7, 2004, at 2:00 P.M. at the Unitarian Universalist Church in Wakefield, 326 Main Street, Wakefield, MA 01880, phone (781) 245-4632 or 646-2321. I am requesting an escorted furlough to attend this funeral service.

    Thank you for your attention to this matter.

Very truly yours,

Joel Pentlarge

cc: William Newman, Esq.

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

#5852

| | | | |
|---|---|---|---|
| **Name** | PENTLARGE JOEL | **Institution** | MASS. TREATMENT CENTER |
| **Number** | M85594  Housing C1 | **Appeal Date** | |
| | | **Date Of Grievance** | 23-SEP-2004 |
| | | **Appeal Received Date** | 24-SEP-2004 |

**Appeal Remedy Requested / Staff Recipient Signature**

Partial text of appeal:
I appreciate that I was given the opportunity to visit my brother at the hospital on September 7, 2004. Although he was comatose by that time it still meant a great deal to me and to my relatives, my sisters, to be able to be at his bedside. Seeing his dead body at a private viewing at the funeral home would not be add significantly to my last opportunity to see him.

The funeral is a religious service designed to celebrate his life and grieve his death. In the service that is planned anyone who knew my brother will be given an opportunity to share their memories of him. I too would like to share my memories of him, as a way of paying my deepest final respects.

To attend funeral of deceased brother on 9-25-04.

Edington Glenn E  CO II

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 24-SEP-2004   **Decision Date** 24-SEP-2004   **Decision** DENIED

**Decision By**  Murphy Robert F  SUPERINTENDENT

**Reasons / Signature**
Appeal denied. Resident was advised to request private viewing of brother's remains at the funeral home. He declined to submit a request for a private viewing. The Department views the private viewing as comparable to a funeral.

Date  9-24-04

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Inmate's Name** | PENTLARGE JOEL | **Institution** | MASS. TREATMENT CENTER |
| **Number** | M85594 | **Appeal Received Date** | 24-SEP-2004 |
| **Staff Recipient** | Edington Glenn E  CO II | | |

**Superintendent's Signature**

ATTACHMENT "C"

## DEPARTMENT OF CORRECTION
## INSTITUTION APPEAL FORM
**EMERGENCY — FORWARD TO THE INSTITUTIONAL SUPERINTENDENT**

09-24-04P12:54 RCVD

### SECTION A

NAME: Joel Pentlarge    INSTITUTION: Nemansket Correctional Center

NUMBER: M85594    HOUSING UNIT: C-1    DATE OF INCIDENT: 9/23/04

APPEAL: Please see attached.

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY REQUESTED: Please allow me to attend the funeral of my brother on Saturday, September 25, 2004.

INMATE SIGNATURE: Joel Pentlarge    DATE: 9/23/04

STAFF RECIPIENT: _____    DATE: _____

DATE RECEIVED: _____

### SECTION B

ASSIGNED GRIEVANCE NUMBER: 04-5852

ASSIGNED INSTITUTION APPEAL NUMBER: _____

DECISION RENDERED:   ___ APPROVED   ✓ DENIED

SUMMARY OF FINDINGS: Sa IMS

SUPERINTENDENT'S SIGNATURE: [signature]    DATE: 9/24/04

### SECTION C

INMATE APPEAL RECEIPT    Funeral Appeal

INMATE NAME: Joel Pentlarge    C-1    INSTITUTION: N.C.C.

NUMBER: M85594    DATE RECEIVED: 09-24-04P12:54 RCVD

RECEIPTING STAFF: [signature] Miranda    TITLE: AAI

01/05/01    491 - 14

09-24-04P12:54 RCVD

September 23, 2004

Grievance Appeal Re: Attending my brother's funeral.

    I appreciate that I was given an opportunity to visit my brother at the hospital on September 7, 2004. Although he was comatose by that time, it still meant a great deal to me and to my relatives, my sisters, to be able to be at his bedside. Seeing his dead body at a private viewing at the funeral home would not be add significantly to my last opportunity to see him.

    The funeral is a religious service designed to celebrate his life and grieve for his death. In the service that is planned anyone who knew my brother will be given an opportunity to share their memories of him. I too would like to share my memories of him, as a way of paying him my deepest final respects.

    While it may be appropriate for a prison to adopt a one size fits all security policy, substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution, requires that there be individualized assessment of what is the least restrictive alternative. <u>Youngberg v. Romeo</u> and <u>King v. Greenblatt</u>. I am a 54 year old man. My only criminal record is for five counts of statutory rape, a non-violent offense. I have served now four years in prison with no incidents of violence and no attempts at escape. By any rational assessment I present as low a security risk as it is possible to have and still be in a secure treatment facility. If I can not be given an emergency escorted furlough to attend a funeral, then no one can. In fact, according to the Superintendent, it is the unpublished policy of the D.O.C. that no one is allowed to attend a funeral, in spite of the clear language of 103 C.M.R. 463.07(2)(a) which allows emergency escorted furloughs "to attend the funeral of a relative." I appreciate that this regulation leaves the discretion with the Superintendent, whether to grant a particular furlough to attend a particular funeral, but when the Superintendent, and/or the D.O.C. has adopted a policy that no furloughs will be granted to attend any funerals, that becomes an abuse of discretion, and a violation of the duty to provide the least restrictive alternative.

    It should also be noted that the regulations for furloughs that are being applied to me are the same regulations which apply to all correctional institutions of the D.O.C. As held in <u>Youngberg</u> there is a duty to treat me as a civil detainee more considerately than a prisoner who is being punished would be treated.

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM
#### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

**Name** PENTLARGE JOEL  **Grievance#** 5852  **Institution** MASS. TREATMENT CENTER
**Commit No.** M85594  **Housing** C1  **Date Of Incident** 20040923  **Date Of Grievance** 20040923

**Complaint** The Supt. has denied my request to go to my brother's funeral on Saturday 9/25/04. He said that inmates are never allowed to go to funeral services, not withstanding 103 CMR 463.07 (2) (a) which allows emergency furloughs" to attend the funeral of a relative. The Supt's refusal to implement the regulation as written violates my right to substanstive due process of law as guaranteed by the Fourteenth Admendment to the U.S. Constitution. Applying prison regulations, without any consideration of the "least restrictive alternative", or that I should be treated more kindly than a prisoner violates the Fourteenth Admendment and my First Admendment rights to freedom of religion, speech and association. See Youngherg vs. Romeo.

**Remedy Requested** Please allow me to attend my brother's funneral on Saturday.

**Staff Recipient** Edington Glenn E CO II

**Staff Involved** Murphy Robert F SUPERINTENDENT

**Signature**

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20040923  **Decision Date** 20040923
**Signature** Edington Glenn E CO II
**Final Decision** DENIED
**Decision** Grievant was granted a previous emergency furlough, (Sept. 7, 2004), to visit a critically ill relative. Grievant may file a request with the Superintendent, for a private viewing of relative at the funeral home. Due to security concerns, grievant is unable to attend the funeral service.
**Signature** Sgt. Glen Edington  **Date** 9-23-04

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

**Name** PENTLARGE JOEL  **Institution** MASS. TREATMENT CENTER
**Commit No.** M85594  **Grievance#** 5852  **Date Received** 20040923
**Signature** Edington Glenn E CO II

*Emergency*

ATTACHMENT "A"

**DEPARTMENT OF CORRECTION**
**INMATE GRIEVANCE FORM**
**FORWARD TO THE INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)**

**SECTION "A"**

NAME: Joel PeatLarge      INSTITUTION: Nemansket Correctional Center

NUMBER: M85594    HOUSING UNIT: C-1    DATE OF INCIDENT: 9-23-04

COMPLAINT: The Supt. has denied my request to go to my brother's funeral on Saturday 9/25/04. He said that that inmates are never allowed to
(ATTACH ADDITIONAL PAGE IF NECESSARY)    *See attached*

REMEDY REQUESTED: Please allow me to attend my brother's funeral on Saturday.

INMATE SIGNATURE: Joel PeatLarge    DATE: 9/23/04
STAFF RECIPIENT: [signature]    DATE: 9/23/04
DATE RECEIVED: 9-23-04

**SECTION "B"**

ASSIGNED GRIEVANCE NUMBER: 04-5852

DECISION RENDERED:    ___ APPROVED
                      ___ DENIED

SUMMARY OF FINDINGS:

IGC SIGNATURE: _____    DATE: ___
(DENIED GRIEVANCES MAY BE APPEALED TO THE SUPERINTENDENT WITH 10 DAYS OF IGC'S DECISION.)

**SECTION "C"**
**INMATE GRIEVANCE RECEIPT**

INMATE NAME: _____    INSTITUTION: _____
NUMBER: _____    DATE RECEIVED: _____
SIGNATURE (IGC): _____    TITLE: _____

.01/05/01

491 - 13

#585D-

Funeral Grievance
Complaint cont.

to go to funeral services, notwithstanding 103 CMR 463.07(2)(a) which allows emergency furloughs "to attend the funeral of a relative."

The Superintendent's refusal to implement the regulation as written violates my right to substantive due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution. Applying prison regulations, without any consideration of the "least restrictive alternative" or that I should be treated more kindly than a prisoner violates the Fourteenth Amendment and my First Amendment rights to Freedom of Religion, Speech and Association. See *Youngberg v Romeo*.

103 CMR: DEPARTMENT OF CORRECTION

103 CMR 463.00:     FURLOUGHS

Section

463.01: Purpose
463.02: Cancellation
463.03: Applicability
463.04: Statutory Authorization
463.05: Access to Regulations
463.06: Definitions
463.07: Eligibility Requirements
463.08: Furlough Time
463.09: Furlough Sponsor
463.10: Furlough Panel
463.11: Emergency Furlough
463.12: Initial Furlough
463.13: Subsequent Furlough
463.14: Notifications
463.15: Duties and Responsibilities
463.16: Inmate Accountability
463.17: Abuse of Furlough Privileges
463.18: Escape
463.19: Furlough Rules
463.20: Record Keeping
463.21: Cancellation and Extension of Furloughs
463.22: Miscellaneous Regulations
463.23: Program Evaluation
463.24: Responsible Staff
463.25: Review Date
463.26: Severability Clause

463.01: Purpose

    The purpose of 103 CMR 463.00 is to establish rules and procedures which govern the Department of Correction Furlough Program.

463.02: Cancellation

    103 CMR 463.00 cancels all previous departmental or institutional policy, policy statements and rules and procedures regarding furloughs.

463.03: Applicability

    103 CMR 463.00 is applicable to all state correctional facilities and county correctional facilities in which inmates of state correctional facilities are confined.

103 CMR: DEPARTMENT OF CORRECTION

Furlough Progress Report - A report generated by a correction counselor prior to each subsequent furlough and presented to the Furlough Panel, to include current information concerning the inmate's progress in the furlough program, other program participation and conduct.

Furlough Year - The year commencing from the date of final approval of an initial furlough by the Commissioner or by the Commissioner's designee and ending 12 months later. Each additional furlough year shall be on the anniversary date of the final approval of the initial furlough.

Furlough Panel - A committee comprised of no less than three and no more than five institution employees recommended by the Superintendent and approved by the Commissioner or his designee, whose responsibility is to review and make recommendations to the Superintendent regarding inmate furlough requests.

Relative - The inmate's father, mother, child, brother, sister, husband or wife and a grandparent, uncle, aunt, or foster parent who acted as a parent in rearing the inmate provided such a relationship can be verified through available documentation.

Summary/Key Issues Form - A face sheet identifying the key issues used in making a decision regarding an inmate's classification or furlough status.

Superintendent - A Superintendent of a state correctional facility, a director of a contract facility or the chief administrative officer of a county correctional facility.

463.07: Eligibility Requirements

(1) An inmate shall be eligible to be considered for a furlough under the following conditions:
   (a) An inmate serving a life sentence for murder in the second degree shall be required to serve 12 years from the effective date of sentence.
   (b) Except for inmates serving a life sentence for murder in the first degree for whom furloughs are not allowed, all other inmates shall be required to have served at least 50% of the time between their effective date of sentence and their parole eligibility date or earliest release or discharge date, whichever is less, and shall be within three years of their parole eligibility date or earliest release or discharge date, whichever is less, before being eligible for an initial furlough. The eligibility requirement of 103 CMR 463.07 shall not preclude from furlough participation those inmates not yet within three years of their parole eligibility date or earliest release or discharge date, whichever is less, who are furlough certified prior the effective date of 103 CMR 463.00. Any inmate not within three years of his/her parole eligibility date or earliest release or discharge date, whichever is less, and certified prior to the effective date of 103 CMR 463.00, and who is terminated from the furlough program for any reason subsequent to the effective date of 103 CMR 463.00 shall thereafter be subject to the eligibility requirements of 103 CMR 463.07.
   (c) An inmate shall be considered eligible for an initial furlough provided that he meets the criteria established in 103 CMR 463.07(1)(a) and (b); and does not have a felony warrant or detainer pending, has been determined not to be a sexually dangerous person in accordance with M.G.L. c. 123A, is not serving a mandatory sentence restricting involvement in the furlough

2/10/95                                                                                      103 CMR - 3

program, is not serving a sentence for murder 1st degree and has been deemed appropriate for participation in the furlough program in accordance with 103 CMR 420.00: *Classification*, and the respective institution classification procedures.

(d) The decision to recommend or approve the inmate for a furlough shall be based upon the inmate's ability to conduct himself responsibly while in the community; past and present conduct in the correctional system; past history of release on furlough, probation, parole or bail; involvement in institution programs or rehabilitative activities; history of violent behavior; offense; and absence of any pending legal issues.

(2) An inmate shall be authorized to receive a furlough for the following purposes only:
    (a) to attend the funeral of a relative;
    (b) to visit a critically ill relative;
    (c) to obtain medical, psychiatric, psychological or other social services when adequate services are not available at the facility and cannot be obtained by temporary placement in a hospital under M.G.L. c. 127, §§ 117, 117A and 118.
    (d) to contact prospective employers.
    (e) to secure a suitable residence for use upon release on parole or discharge.
    (f) for any other reason consistent with the reintegration of a committed offender into the community.

463.08: **Furlough Time**

(1) An inmate of any state correctional facility shall be eligible for 14 furlough days (336 hours) during his furlough year.

(2) An inmate shall not be eligible to receive more than seven furlough days in the first half of a furlough year except for inmates participating in pre-release programs who may be so eligible.

(3) Furlough days or any part remaining at the end of the first half of the furlough year may be carried from the first half of a furlough year to the next, but no furlough days may be carried from one furlough year to the next furlough year.

(4) Inmates returning early from a furlough shall be credited for such early return in full unused half hour periods of time. Inmates returning late from a furlough shall have time deducted for such late return in half hour periods of time.

(5) An inmate's furlough year will begin either from the date of the inmate's emergency furlough, emergency escorted furlough, or the date of the inmate's initial furlough, taken during the current commitment.

(6) Should an inmate on positive furlough status lose that status due to a classification decision or disciplinary sanction, the effective date of the furlough year will not be affected if he is reinstated to positive furlough status.

103 CMR: DEPARTMENT OF CORRECTION

Departments Investigations Unit. Included in the package shall be a recent classification board report and a copy of the sponsor's telephone bill. The chief of the investigation unit shall review the package for completeness and act as a reviewing authority. The chief of investigations shall return the package to the facility with comments and recommendations. The sponsor package will be reviewed by the institution furlough panel, for a determination of approval or denial of the individual to act as a furlough sponsor. The facility Superintendent will render a final decision as to the appropriateness of the individual to act as a furlough sponsor.

463.10: Furlough Panel

(1) Each facility Superintendent shall recommend to the Commissioner or his designee the appointment of certain institution employees as members of the institution furlough panel. The Commissioner or his designee will approve or deny an individual as a member of the furlough panel.

(2) Each institution furlough panel shall consist of at least three, but not more than five, institution employees. A deputy superintendent shall act as the chairperson; other members must include a correction counselor of supervisory rank, a correction officer, or in those facilities not staffed with correction officers, a correction counselor having care and custody responsibilities.

(3) The duties and responsibilities of the institution furlough panel shall be the following:
(a) to convene on a regular and continuing basis to consider the furlough applications of inmates;
(b) to review each furlough application and all other related materials, including results of the sponsor investigation, completed sponsor forms, results of interviews, the most recent institution classification board report for completeness and accuracy; and to interview the inmate if deemed necessary and appropriate;
(c) to recommend approval or denial of an individual's application to act as a furlough sponsor;
(d) to defer a recommendation of a furlough application when such an application or any supporting material is incomplete or inaccurate, or there is action pending which may affect the recommendation of the panel;
(e) to record in writing on the furlough authorization sheet, the votes and signatures of individual board members and any recommendation, with reasons, for approval, denial, modification or deferral of a furlough.

463.11: Emergency Furlough

(1) Whenever an inmate indicates to the furlough coordinator, or other staff are notified that an emergency exists and said emergency satisfies a purpose outlined in 103 CMR 463.07(2), the inmate may be granted an emergency furlough, or an emergency furlough under escort, provided said emergency is verified by the designated staff member.

(2) Upon verification that an emergency exists, the designated staff member shall complete a furlough authorization sheet and instruct the inmate to complete a furlough application listing the specific itinerary. The designated institution staff member shall verify all locations listed on the itinerary. The institution superintendent shall review the request for an emergency furlough

2/10/95

103 CMR - 6

M.-C. LAW LIBRARY

103 CMR: DEPARTMENT OF CORRECTION

including the application and itinerary, and approve, modify or deny the request and determine the conditions for the furlough. The institution furlough coordinator shall submit the request for emergency furlough with conditions to the Central Furlough Unit for approval by the Commissioner or his designee. The designated staff member must forward the furlough authorization sheet to the Central Furlough Unit within one week for signature by the Commissioner or his designee.

(3) The conditions for approval of the emergency furlough must be consistent with the security designation of the institution. An inmate currently on positive furlough status may be released on an emergency furlough without escort, provided the requirements in 103 CMR 463.11(1) and (2) have been satisfied. However, the inmate must be accompanied by the sponsor approved in accordance with 103 CMR 463.09. An inmate not on positive furlough status must be accompanied by an escort, or escorts, to be determined in accordance with the security designation of the institution. In the case of an emergency furlough for an inmate from a medium or maximum security institution, the inmate must be escorted by at least two correction officers, one of whom holds a commission as a special state police officer. In all cases, transportation procedures shall be adhered to at all times in accordance with 103 CMR 503.00: *Inmate Transportation*. The institution superintendent reserves the right to increase the security coverage as he deems necessary.

(4) Following approval by the Commissioner or his designee, the institution furlough coordinator shall be responsible for making telephone notification of the impending emergency furlough in accordance with 103 CMR 463.14(1) and (2). Said notification shall immediately be followed by a written notification.

463.12: Initial Furlough

(1) An inmate shall not be considered for an initial furlough unless he has met the eligibility and suitability requirements set forth in 103 CMR 463.07.

(2) Each institution shall develop procedural requirements clearly stating when an inmate may apply for an initial furlough following the inmate's transfer or admission to that facility. Such requirements must be consistent with the eligibility criteria established in 103 CMR 463.07 and the security designation of that institution.

(3) The process of considering an inmate for an initial furlough shall be as follows:
    (a) the institution furlough coordinator shall receive the inmate's application for a furlough. The institution furlough coordinator shall verify that the inmate is eligible for participation in the furlough program consistent with 103 CMR 463.07. The institution furlough coordinator shall verify that the inmate's furlough sponsor has been approved in accordance with 103 CMR 463.09;
    (b) the inmate's furlough application, along with a furlough authorization sheet, sponsor approval forms, the most recent institution classification board report, and any other accompanying documentation, shall be presented to the institution furlough panel by the institution furlough coordinator for the panel's recommendation of approval or denial, or approval with certain conditions, to the institution superintendent.