UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. No. 04-30177-KPN

JOEL PENTLARGE,

        Plaintiff,

vs.

ROBERT MURPHY, et al.,

        Defendants.

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
TO ORDER THE DEFENDANTS TO REPAIR THE HEAT AND LEAKING ROOF

FACTUAL BACKGROUND

On November 17, 2004 the plaintiff was moved to cell 4 on Unit A-2. (Second Supplemental Complaint, ¶ 139.) The roof over Unit A-2 leaks. Four trash barrels are permanently deployed to catch leaks in the common area, and four light fixtures in the ceiling are out of service and show substantial rusting from the constant leakage. Water from the leaking roof runs down a pipe chase between cells 3 and 4 and then seeps out over the floor, blistering the paint off the wall, rusting the bottom of the steel door casings and loosening the linoleum on the floor. (Comp. ¶ 141.) According to the director of maintenance the roof has leaked over Unit A-2 for the six years that he has worked at the Nemansket Correctional Center. Inmates on Unit A-2 report that the roof started leaking in 1987 or 1988. (Comp. ¶ 142.) The leaking roof has been cited in reports of the Massachusetts Department of Public Health which are done annually. (Comp. ¶ 143.)

Sicne the plaintiff moved onto Unit A-2 the circulating pump, which circulates the hot water through the baseboard heating system has not been working. According to the Maintenace Director

an electrician is need to repair the circulator, but the staff electrician has been out of work for the last three weeks. (Comp. ¶ 145.) Without a circulator the hearing system on Unit A-2 is not sufficient to maintain the temperatures required by 105 CMR 410.201 or recommended by 105 CMR 451.330 of 68° F. between 7:00 A.M. and 11:00 P.M. and 64° F. between 11:01 P.M. and 6:59 A.M. (Comp. ¶ 146.)

STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

Four criteria govern the decsion to grant or deny a preliminary injunction. Langlois v. Abington Housing Authority, 207 F.3d 43, 47 (1st Cir. 2000). The district court must consider:

(1) the likelihood of success on the merits;

(2) the potential for irreparable harm if the in the injunction is denied;

(3) the balance of relevant impositions, i.e., the hardship to the nonmovant, the defendants, if enjoined, as constrasted with the hardship to the movant, the plaintiff, if no injunction issues; and

(4) the effect (if any) of the court's ruling on the public interest.

Wagner v. City of Holyoke, 100 F.Supp.2d 78, 82 (D. Mass. 2000, Ponsor, J.) citing Ross-Simmmons of Warwick, Inc. v. Baccarat, 102 F.3d 12, 15 (1st Cir. 1996).

ARGUMENT

1. The plaintiff is likely to succeed on the merits because he is entitled to conditions which meet the minimum standards of fitness for human habitation both as a matter of substantive due process and as matter of state law.

The plaintiff has been civilly committed to the Nemansket Correctional Center pursuant to M.G.L. c. 123A. (Comp. ¶ 10-12.) Notwithstanding its name, the Nemansket Correctional Center has been authoratively declared to be "not a correctional facility" but instead "a secure mental health facility." Commonwealth v. Knapp, 441 MaSS. 157, 168, 804 N.E.2d 885, 894 (2004), citing Doe v. Gaughan, 808 F.2d 871, 879 (1st Cir. 1986). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. Youngberg v. Romeo, 457 U.S. 307, 321-322, 73 L.Ed.2d 28 (1982). See also King v. Greenblatt, 53 F.Supp.2d 117 (D. Mass. 1999) for a partial history of the extensive litigation that has been necessary to bring the conditions of confinement up to even an approximation of prison.

The Massachusetts Department of Public Health has issued to sets of regulations setting minimum standards of fitness for human habitation. Generally 105 CMR 410.00, et seq., applies to every building used for human habitation, except prisons. 105 CMR 410.010 and 410.020 (Definition of "Dwelling"). The standards for prisons are set out in 105 CMR 451.00, et seq.

The standard for heat for prisons is:

<u>451.330 Heating</u>

>  Each facility should provide heating for every cell, bathroom and toilet compartment, and other habitable area at a temperature of at least 68° F., between 7:00 A.M. and 11:00 P.M. and at least 64° F., between 11:01 P.M. and 6:59 A.M., every day other than during the period from June 15 to September 15, inclusive in each year....

The standard for heat in all other dwellings is:

<u>410.201 Temperature Requirements</u>

The owner shall provide heat in every habitable room and every room containing a toilet, shower or bathtub to at least 68°F 20°C between 7:00 A.M. and 11:00 P.M. and at least 64°F (17°C) between 11:01 P.M. and 6:59 A.M. every day other than during the period from June 15th to September 15, both inclusive; in each year....

If the court concludes that the Nemansket Correctional Center is not a correctional facility, as did the Massachusetts Supreme Judicial Court in <u>Knapp</u>, <u>supra</u>, then the minimum standards of fitness for human habitation set out in 105 CMR 410.00 et seq., apply, and the defendants are required both to meet the temperature requirements of 410.201 and maintain "in good operating conditions the facilities for heating every habitable room... to the temperature as required under 410.201."  105 CMR 410.200.

If the court concludes that for purposes of the state sanitary code the plaintiff is being held in a correctional facility, the plaintiff is still entitled under <u>Youngberg v. Romeo</u> to be "more considerate treatment and conditions of confinement than criminals." <u>Supra</u>.  Here the plaintiff is only asking that the defendants be ordered to provided the same level of heating that the Department of Public Health has determined should be provided to prisoners.  105 CMR 451.330.

In either case, whether the court finds the minimum standards of fitness for human habitation applicable, and enforces it as provided by G.L. c. 111, § 127A, et seq, under the court's supplemental jurisdiction, or the court enforces the plaintiff's right to substantive due process under the Fourteenth Amendment to the United States Constitution to be treated more considerately

than prisoners, there is a substantial likelihood that the court will order the defendants to repair the heating system so that the heat is sufficient to meet the requirement of either 105 CMR 410.201 or 451.330.

The same analysis applies to repair of the leaking roof. 105 CMR 410.500 requires every owner to maintain roofs in watertight condition. 105 CMR 451.350 provides that the roofs of correctional facilities should be maintained in watertight condition. In either case, after a full hearing on the merits there is substantial likelihood that the court will order the roof repaired.

    2. As a matter of law the plaintiff is suffering irreparable harm from the violation of the housing code and his constitutional rights.

Under the housing code 105 CMR 410.750 (B) failure to provide heat and (K) roof defects that may expose the occupant to shock, accident or other danger are deemed to be "conditions which may endanger or impair the health, or safety and well being of a person or persons occupying the premises." The code also requires that owners be ordered to "make a good faith effort to correct within 24 hours" these violations. 105 CMR 410.830(A) (1) and (9).

Alternatively loss of Fourteenth Amendment rights to substantive due process of law, constitutes an irreparable harm, just as the loss of First Amendment freedom unquestionably constitutes irreparable harm. Wagner, supra.

In more concrete terms as December progresses and normal temperatures outside become substantially colder, the heating system will become totally inadequate and may even freeze, as it did last winter. Under those circumstances the cells become

like ice boxes, and being locked in them is extremely uncomfortable, and certainly a serious health hazard for the elderly and handicapped inmates who are on Unit A-2. Similarly any significant rain or snow will substantially aggravate the leak in the roof. What is unkown is whether the persistent leaking over the last 6 to 16 years has caused structural damage to roof.

> (3) The defendants will only be ordered to do that which they have a legal obligation to do in any event, while the plaintiff will contiune to suffer until the repairs are made.

The defendants have a clear legal duty to repair the heat and the roof. It is only bureaucratic inertia that has prevented them from doing so already. It is in their own interest to do these repairs sooner rather than later. If they wait to repair the heat until the bitterly cold weather, there is a substantial likelihood that the heating pipes will freeze up as they did last winter, and that will result in both greater discomfort to the plaintiff and other inmates it will also require much more extensive repairs. Similarly the structural portions of the roof were not designed for constant moisture, and eventually the moisture will do structural damage. Already door casings, wall paint, carpeting, and linoleum have been damaged by the leaks as well as light fixtures. As noted above the degree of harm that the plaintiff and other inmates suffer is directly proportional to how cold it is outside, and how much it rains or snows.

> (4) An order enforcing the state sanitary code or the plaintiff's constitutional rights is in the public interest.

There is a strong presumption that enforcing the mimimum

standards of fitness for human habitation is in the public interest. See Boston Housing Authority v. Hemmingway, 363 Mass. 184 (1973) and Boston Housing Authority v. Perez, 379 Mass. 703 (1980). Similarly it is always in the public interest to uphold constitutional rights to ensure that persons who are not being punished, although they are being held involuntarily, are treated humanely. The defendants themselve have already indicated that the heat and roof should be repaired. It is in the public interest that the court provide the additional impetus to accomplish these repairs, in the case of the heat immediately, in case of the roof within a month.

CONCLUSION

On the merits both the heat and roof must be repaired promptly. The plaintiff is suffering irreparable harm, which will only get worse as the weather get colder and wetter. For the defendants to do what they are legally obligated to do is not a hardship, particularly after a month of delay for the heat, and over six years of delay for the roof. Each day of delay is a hardship for the plaintiff and the other inmates on that unit, many of whom are elederly and seriously handicapped. An order for repairs is in the public interest. Allowing these conditions to continue for any substantial length of time is likely to increase the ultimate cost of repairs to the public treasury.

The plaintiff is entitled to the issuance of a preliminary injunction ordering the defendants, Commissioner Dennehy, Superintendent Murphy and the Massachusetts Department of Correction to repair the heat to Unit A-2 within 24 hours and to repair

the roof to Unit A-2 within 30 days.

                              Respectfully submitted,

                              Joel Pentlarge, Plaintiff,

                              Joel Pentlarge, Pro Se
                              Nemansket Correctional Center
                              30 Administration Rd.
                              Bridgewater, MA 02324
                              Telephone (413) 967-3453

                    Certificate of Service

    I, Joel Pentlarge, certify under the pains and penalties of perjury that I have served a copy of the foregoing memorandum by DOC mail on Attorney Mary Murray, Natalya Pushkina and Deborah O'Donnell at 30 Administration Rd., Bridgewater, MA 02324, and by first class mail on Attorney General Thomas Reilly at One Ashburton Place, Boston, MA 02108.

November 30, 2004                          Joel Pentlarge