UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS



C.A. No. 04-30177-~~KPN~~

JOEL PENTLARGE,

    Plaintiff,

vs.

ROBERT MURPHY, et al.,

    Defendants.

## SECOND SUPPLEMENTAL COMPLAINT

138. The plaintiff re-alleges and incorporates all of the allegations contained in the 136 paragraphs of the complaint, amended complaint and supplemental complaint, all previously filed in this action.

## STATEMENT OF SUPPLEMENTAL FACTS
### COUNT X FURTHER HOUSING CODE VIOLATIONS

139. On November 17, 2004 the plaintiff was moved to cell 4 on Unit A-2 of the Nemansket Correctional Center.

140. Unit A-2 is the only handicapped accessible unit in the Nemansket Correctional Center. It has seven cells which are wheel chair accessible, and many of the inmates in the other cells have substantial physical handicaps which limit their mobility.

141. The roof over Unit A-2 leaks. Four trash barrels are permanently deployed to catch the leaks in the common area. Four light fixtures are out service and show substantial rusting from the constant leakage. The water runs down a pipe chase between cells 3 and 4 and then seeps out over the floor, blistering the paint of the wall, rusting the bottom of the steel door casings and loosening the linoleum.

142. According to the Director of Maintenance, Daniel

Quinn, the roof has leaked over Unit A-2 for the six years that he was worked at the Nemansket Correctional Facility. Inmates on unit A-2 report that the roof started leaking in 1987 or 1988.

143. The leaking roof and the water leaking out of the light fixtures was cited in the annual inspection of the Nemansket Correctional Center performed by Joel M. Hollis, a sanitarian for the Massachusetts Department of Health, on November 28, 2003. The report notes that this condition was present on the previous inspection report.

144. Also cited on the report was of Mr. Hollis was overcrowding by double bunking of cells.

145. Since the plaintiff moved onto Unit A-2 the circulating pump, which circulates the hot water through the baseboard heating system has not been working. According the Maintenance Director Mr. Quinn, an electrician is needed to repair the circulator, but the staff electrician has been out of work for the last three weeks.

146. Without a circulator the heating system on Unit A-2 is not sufficient to maintain the temperatures required by 105 CMR 410.201 or recommended by 105 CMR 451.330 of 68° F. between 7:00 A.M. and 11:00 P.M. and 64° F. between 11:01 P.M. and 6:59 A.M.

COUNT XI ADDITIONAL INTERFERENCE WITH MAIL

147. On October 26, 2004, Deputy Superintendent Duane MacEachern contrabanded the November 1 issue of The New Yorker magazine to which the plaintiff subscribes. The Deputy Superintendent

gave as his reason for the contranbanding: "Sexually explicit pictoral material or material that features nudity. Per 103 CMR 481.15(3) it is the Deputy Superintendent's decision as to whether or not a publication should be excluded. pg 85."

148. Page 85 of the November 1 New Yorker is part of a 32 page pictorial by Richard Avedon, who died while still taking photographs for this piece. The piece is entitled "Democracy" and was published posthumuously. It is a survey of America on the eve of the 2004 election.

149. In appreciation of Avedon, Adam Gopnik wrote in the October 11, 2004 issue of The New Yorker that:

> His definitive portraits of the powerful and powerless, encompassing, in a manner almost without equal in the history of portraiture, the artistic and political hierarchies of the past half century of American life, were almost Roman in their severe authority. But they were not the negation of his dancing and delighted fashion photographs, as critics sometimes thought: the portraits were the solid, mineral form of what was, in the fashion pictures, pure liquid. Both were studies in human performance: how we prepare a face to face the world, and how the world shows itself in our faces. As long as people remain curious aobut life in the twentieth century, they will turn to Avedon's photographs to see how it looked, and what it meant.

150. The "Democracy" pictorial in the November 1 issue of The New Yorker contained picutres of both the powerful and the powerless, including Jimmy Carter, Ronald Reagan, Jr., Robert F. Kennedy, Jr., Bill O'Reilly, James Carville, Karl Rove, Julian Bond, Bill and Melinda Gates, Sean Penn, Barack O'Bama and Granny D. Haddock. The offending picture on page 85, as it has been described to the plaintiff, is of members of Act Up, a gay rights and AIDS action group. The Act Up members, both men and women, are standing naked facing the camera with the letters for the message "STOP AIDS stencilled on thier chests.

151. The plaintiff appealed the contrabanding of the entire November 1 issue of The New Yorker to the defendant Superintendent Murphy, as provided by 103 CMR 481.16 with a copy to the defendant Commissioner Dennehy. Superintendent Murphy upheld contrabanding the entire issue.

152. The contrabanding of the November 1 New Yorker is a content based restriction on the plaintiff's First Amendment right of Free Speech, which is presumed to be invalid, and which can only be valid if narrowly tailored to serve a compelling state interest. The contrabanding of the entire issue of The New Yorker is not narrowly tailored, nor is there any compelling state interest which is served by it.

153. The actions of the defendants Murphy and Dennehy in contrabanding any mail of the plaintiff go beyond the scope of the authority for which the regulations of the Department of Correction apply and beyond the scope of the authority of the statutes under which the regulations purport to have been issued. The regulations set out in 103 CMR 481.00, et seq., provide that they are applicable to "to all state correctional institutions." 103 CMR 481.04. The purpose of the regulations is to establish rules governing mail sent and received by "inmates confined in state correctional institutions." 103 CMR 481.01. The regulations purport to be authorized by M.G.1. c. 124, § 1, (b), (c) and (q) and c. 127, § 87, all styautuory provisions for regulations for prisoners in correctional institutions.

COUNT XII INTERFERENCE WITH THE APPEAL PROCESS

154. While the plaintiff's appeals of the contrabanding of The New Yorker and copies of five legal cases (see the Supplemental Complaint, ¶¶ 126-130) were pending the property office

received property which had been ordered by the plaintiff, including typewriter ribbons, which the plaintiff was about to run out of. Because the plaintiff had pending contraband appeals which had not been resolved the property officer refused to deliver to the plaintiff any of the property which the plaintiff had ordered.

155. On October 28, 2004 the plaintiff wrote to Superintendent Murphy and Commissioner Dennehy requesting that they authorize the immediate release of the plaintiff's ordered property, and that the plaintiff not be penalized for appealing the contrabanding of correspondence to him.

156. On November 2, 2004 Deputy Superintendent Duane J. MacEachern replied to the plaintiff's letter on behalf of Superintendent Murphy, quoting 103 CMR 403.13(5) of the Inmate Propery Policy:

> "Permission slips shall not be approved for inmates who have documented contraband in temporary storage at any institution."

Deputy MacEachern recommended to the plaintiff that he dispose of the contraband promptly to allow him to receive his property.

157. On November 9, 2004 the plaintiff mailed out all of the contraband items through the property office.

158. As applied to the plaintiff, 103 CMR 403.13(5), while appeals are pending of contrabanded correspondence, violates the plaintiff's right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and Article XI of the Declaration of Rights to the Massachusetts Constitution by penalizing the plaintiff for exercising his right to appeal the contrabanding.

159. The actions of the defendants Murphy and Dennehy applying the Inmate Property Policy, 103 CMR 403.00, et seq., to the plaintiff, a civilly committed person, goes beyond both the scope of the regulations and statutes by which the regulations purport to be authorized.

ADDITIONAL RELIEF

Wherefore the plaintiff requests that the court grant the following relief:

1. The court enter a preliminary and permanent injunction pursuant to 42 U.S.C. § 1983, and G.L. c. 111, §§ 127A, et seq., ordering the defendants Dennehy, Murphy and the Massachusetts Department of Correction to repair the insufficient heat in Unit A-2 of the Nemansket Correctional Center within 24 hours as provided by 105 CMR 410.830(A)(2) and 410.200, and to repair the leaking roof to Unit A-2 within 30 days.

2. The court declare that 103 CMR 403 and 481 on their face do not apply to the plaintiff as a civilly committed person in "secure mental health facility;" and declare that if 103 CMR 403 and 481 were applied to the plaintiff, doing so would exceed the scope of the statutory authority under which these regulations purport to be promulgated.

3. The court enter a preliminary and permanent injunction ordering the defendants Dennehy, Murphy and the Massachusetts Department of Correction to refrain from interfering with the plaintiff's incoming mail particularly the November 1 issue of The New Yorker.

4. The court enter a preliminary and permanent injunction

ordering the defendants Dennehy, Murphy and the Massachusetts Department of Correction from in anyway penalizing the plaintiff for exercising his rights to appeal the contrabanding of any incoming mail or property.

5. Grant the plaintiff damages for the violation of his First and Fourteenth Amendment rights against the defendants Dennehy and Murphy individually.

6. Grant such further relief as justice and equity require.

Joel Pentlarge, Plaintiff

_____
Joel Pentlarge, Pro Se
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324
Telephone (413) 967-3453

Verification

I, Joel Pentlarge, state under the pains and penalties of perjury that all of the facts stated in the foregoing Second Supplemental Complaint are true.

November 27, 2004

_____
Joel Pentlarge

Certificate of Service

I, Joel Pentlarge, state under the pains and penalties of perjuty that I have served a copy of the foregoing Second Supplemental Complaint by DOC mail on Attorney Mary Murray, Natalya Pushkina and Deborah O'Donnell, and by first class mail on Attorney General Thomas Reilly, One Ashburton Place, Boston, MA 02108.

November 30, 2004

_____
Joel Pentlarge