FILED
UNITED STATES DISTRICT COURT CLERKS OFFICE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION    2005 FEB 14 P 3: 37

CIVIL ACTION NO. 04-30177-RBS
U.S. DISTRICT COURT
DISTRICT OF MASS.

**JOEL PENTLARGE,**
**Plaintiff,**

**v.**

**ROBERT MURPHY, *et al.*,**
**Defendants.**

## APPENDIX OF EXHIBITS
## FOR

## OPPOSITION OF DEFENDANTS THE MASSACUSETTS
## DEPARTMENT OF CORRECTION, ROBERT MURPHY AND
## KATHLEEN DENNEHY TO PLAINTIFF'S MOTION FOR A
## PRELIMINARY INJUCTION TO REPAIR ROOF AND HEAT

Submitted herewith are the exhibits relating to the above entitled opposition which was filed electronically on this date:

Exhibit A:    Affidavit of Daniel Quinn
Exhibit B:    Affidavit of Jeffrey Quick
Exhibit C:    Copy of Memorandum of Decision, *O'Brien v. DuBois, et. al.,* Worcester
              Superior Court, Civil Action No. 94-2170 (1995) (Carhart, J.)
Exhibit D:    Copy of Memorandum of Decision, *Alexander, et. al. v. DuBois, et. al.,*
              Middlesex Superior Court, Civil Action No. 94-6486 (1997)
              (Gershengorn, J.)

Defendants Massachusetts Department of
Correction, Robert Murphy and Kathleen
Dennehy,

NANCY ANKERS WHITE
Special Assistant Attorney General

By:   *Mary P. Murray*

Mary P. Murray, Counsel  (BBO # 555215)
Department of Correction
Massachusetts Treatment Center
30 Administration Road
Bridgewater, Massachusetts 02324
(508) 279-8184
(508) 279-8181 (fax)
MPMurray@DOC.state.ma.us

Dated: February 11, 2005

### Certificate of Service

I hereby certify that I caused a copy of the within document to be served as follows:
(1) *Pro Se* Plaintiff Joel Pentlarge, by intra-facility mail, Massachusetts Treatment Center
30 Administration Road, Bridgewater, MA  02324
&
(2) Defendants Natalyia Pushkina and Debra O'Donnell, by first class mail, postage pre-paid
upon their counsel of record, Kevin Mulvey, Esquire, Mulvey & Sneider, LLP, 1622A Beacon
Street, Brookline, MA  02446-2201.

*Mary P. Murray*

Mary P. Murray

Dated: February 11, 2005

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

**CIVIL ACTION NO. 04-30177-PBS**

**JOEL PENTLARGE,**
**Plaintiff,**

v.

**ROBERT MURPHY,** *et al.,*
**Defendants.**

## AFFIDAVIT OF DANIEL QUINN

I, Daniel Quinn, first having been duly sworn, upon oath do depose and say the following:

1. I am the Director of Engineering for the Massachusetts Treatment Center ("Treatment Center"). I have been employed by the Department of Correction ("DOC") since January 31, 1999. I am responsible for the physical plant of the Treatment Center.

2. I have a Bachelor of Science degree in business administration. Prior to beginning my current employment, I worked for 10 years in property facility management. I am a licensed construction supervisor.

3. On November 15, 2004, I accompanied Joel Hollis and Paul Halfmann, inspectors for the Department of Public Health ("DPH"), on their inspection of the Treatment Center. Greg Hyde, the Treatment Center's Environmental and Health Safety Officer, also accompanied the DPH inspectors during part of this inspection. The inspection lasted approximately five (5) hours.

*EXHIBIT* A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO. 04-30177-PBS

JOEL PENTLARGE,
           Plaintiff,

v.

ROBERT MURPHY, *et al.*,
           Defendants.

## AFFIDAVIT OF JEFFREY QUICK

I, Jeffrey Quick, first having been duly sworn, upon oath do depose and say the

following:

1. I am the Director of Resource Management for the Massachusetts Department of Correction ("DOC"). I have been employed by DOC since 1986. From approximately 1986 until 1999, I was a Senior Project Manager for the Division of Resource Management. In 1999, I was promoted to my current position.

2. I have received an Associate Degree in Applied Science in Building Construction and a Bachelor of Architecture Degree. I have been a registered architect with the American Institute of Architecture since 1993.

3. As Director of Resource Management, I am responsible for the physical plant department-wide. I prepare capital funding requests and oversee all capital projects within DOC.

*EXHIBIT*    B

- 2 -

4. I am familiar with the Massachusetts Treatment Center ("Treatment Center"). I am aware that the roof on the A housing unit requires replacement. Because the cost of this project exceeds $100,000, this project is considered to be a capital project.

5. I prepare DOC's urgent capital requests annually. DOC's 2004 urgent capital requests included a request for funds to repair roofs in various DOC facilities including the Treatment Center. The funds awarded to DOC in 2004 were not sufficient to undertake the replacement of the A unit roof at the Treatment Center. The 2005 requests have not yet been completed. I anticipate that a request for funds to repair roofs in various DOC facilities, including the Treatment Center, will again be included.

6. DOC submits its urgent capital requests to the Division of Capital Asset Management ("DCAM"). DCAM is a separate state agency that must approve and oversee major construction projects for state agencies.

7. A project such as the replacement of the roof on the Treatment Center's A housing unit falls within the type of project that DCAM must oversee. Before a contract can be awarded, a project of this type must be designed and submitted for competitive bidding process. The design and competitive bidding process generally cannot be completed within thirty (30) days.

8. I plan to inspect the roof on the A housing unit at the Treatment Center within the next thirty (30) days to determine if any interim repairs to the roof are feasible.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 11TH DAY OF FEBRUARY, 2005.

Jeffrey Quick

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.                                          SUPERIOR COURT
                                                       CIVIL ACTION
                                                       NO. 94-2170-C


GORDON O'BRIEN

**vs.**

L.E. DUBOIS, et al


## MEMORANDUM OF DECISION AND ORDER

The defendants, L.E. Dubois, Commissioner of the Department of Corrections, and John Marshall, Superintendent of the North Central Correctional Institution at Gardner, have moved to dismiss and alternatively for summary judgment. For the following reasons, the defendants' motions are allowed.


## BACKGROUND

The plaintiff is an inmate at the North Central Correctional Institution in Gardner. He brings this action pursuant to M.G.L. c. 12, §11 and M.G.L. c. 231A and c. 30A. The plaintiff also brings an action pursuant to 42 USC §1983. The plaintiff seeks injunctive relief and declaratory judgment to redress what he alleges are constitutional violations of his rights pursuant to the terms of his incarceration.

In his complaint, the plaintiff makes numerous allegations with respect to the conditions that exist at the North Central Correctional Institution. Specifically, the plaintiff complains of the failure of the Department of Corrections to launder pillows properly, to provide

*EXHIBIT*   C

washcloths, and to provide clean mattresses as well as numerous complaints involving the bathroom facilities. The plaintiff further alleges that the drinking water at the facility is not of acceptable quality and that the premises subject him to the possibility of contracting communicable diseases. The plaintiff further alleges that the living area space is insufficient to comply with the code of Massachusetts regulations. As redress for these conditions, the plaintiff seeks a declaration that the conditions at the facility constitute cruel and unusual punishment, or that they are a violation of his civil rights guaranteed by the United States Constitution and the Constitution of the Commonwealth of Massachusetts. The plaintiff further alleges a failure of the Department of Corrections to follow its own regulations as found in the code of Massachusetts regulations.

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, "and [further] that the moving party is entitled to judgment as a matter of law," Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent's case or "by demonstrating that proof of that element is unlikely to be forthcoming at trial." Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410

Mass. 706, 716 (1991).   "If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion."   Pederson, supra, 404 Mass. at 17.   "[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment."   LaLonde v. Eissner, 405 Mass. 207, 209 (1989).

Massachusetts General Law, c. 111, §21 is the enabling statute providing for the rules that govern "houses of correction, prisons and reformatories, regarding...general health and safety of a detainee."   The Department of Public Health is charged with the responsibility of maintaining compliance with rules and regulations promulgated to insure safe conditions at prisons.   These Department of Public Health regulations, however, do not provide a private cause of action.   Rather, the Department of Public Health Commissioner is vested with discretion in establishing the rules for the running of prisons.   A reading of 105 CMR 451.00 et seq. makes it clear that broad discretion is left to the Commissioner of the Department of Public Health in regulating the health standards at correctional facilities.   If the Commissioner believes that there are conditions which are dangerous to the public health constituting an emergency, the Commissioner shall notify the Commissioner of Corrections, the Secretary of Human Services and the Governor, and request that the Governor declare that an emergency exists which is detrimental to the public health.   This authority vested in the Department of Public Health Commissioner carries with it, by inference, the right to seek judicial relief through declaratory judgment.   Such a right is shared by

the Attorney General of the Commonwealth as the chief law officer of the Commonwealth. Nowhere in c. 111, §21 is there a private cause of action. Nor does 105 CMR 451.00 et seq. provide for a private cause of action. Rather, the provisions provide for the minimum health and sanitation standards at correctional facilities. The proper party to address public health issues therefore is the Attorney General or the Commissioner of the Department of Public Health.

### The Civil Rights Claim

The plaintiff has further claimed that his civil rights have been violated by the conditions which he alleges are present at the North Central Correctional Institution. The Massachusetts civil rights act does provide a private cause of action if a person alleges that their civil rights have been interfered with by "threats, intimidation or coercion". The prerequisites to maintaining such an action, however, are the elements of threats, intimidation or coercion. Absent one of these three elements, the claim will not stand. The plaintiff has failed to allege facts sufficient to meet the threshold of "threats, intimidation or coercion." Even assuming that the threat of contracting communicable diseases through contact with other inmates or through ingestion of impure drinking water were to be proven by the defendant, such facts alone would be insufficient to show a civil rights violation. Similarly, the plaintiff's cause of action pursuant to 42 USC §1983 must fail. The allegations as made by the plaintiff, even if taken as true, fail to set out a federal civil rights violation.

## The Due Process Issue

The plaintiff argues that the very language of 105 CMR 451.00 et seq. provides for mandatory action by the correctional facility and, therefore, failure to comply with these mandates constitutes a violation of the plaintiff's due process rights. 105 CMR 451.100 provides that "Each correctional facility shall comply with the minimum health and sanitation standards set forth in 105 CMR 451.101 through 105 CMR 451.214." This language, although appearing to explicitly mandate compliance by all correctional facilities, must be read in context of the entire section of 105 CMR 451 et seq. The remedies provided for non-compliance are to be found in 105 CMR sections 401 through 410. These sections clearly vest the Department of Public Health with the responsibility to inspect correctional facilities and to seek compliance so as not to allow conditions to exist which would pose a serious threat to the health or safety of inmates or employees of correctional facilities. These responsibilities carry with them a great deal of discretionary power. The provisions of 105 CMR 451.100, therefore, do not explicitly mandate conditions that must exist at correctional facilities. Rather, in the context of the entire section, they provide guidelines which the Department of Public Health, in its discretion should seek to obtain. Absent a clearly mandated requirement to provide minimal conditions, the due process claim must fail. Kentucky Department of Corrections v. Thompson, 109 S. Ct. 1904 (1989).

The plaintiff's complaints, in sum, refer to the manner in which the North Central Correctional Institution is run. These complaints have centered on the alleged public health deficiencies. The administration of penal institutions is best left to those professionals who are trained

and most knowledgeable of the proper manner in which the correctional facility should be run. It has been noted that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security". Bell v. Wolfish, 441 U.S. 520, 540-547 (1979) quoted in Nelson v. Commissioner of Correction, 390 Mass. 379, 392 (1983). The defendants' motion for summary judgment is, therefore, **ALLOWED**.

Judd J. Carhart
Justice of the Superior Court

DATED: March 3ʳᵈ, 1995
[s.d.]

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

*8/*

SUPERIOR COURT
CIVIL ACTION
NO. 94-4686

WAYNE ALEXANDER, and others[1]

vs.

LARRY E. DUBOIS, and others[2]

MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS'
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Plaintiffs, present and past inmates of the Massachusetts

Department of Correction, formerly housed at the New Line facility[3]

at MCI-Concord ("New Line"), brought this action alleging civil

rights and health violations. Plaintiffs claim that the failure of

prison officials to replace window screens in their former cells at

New Line resulted in an infestation of mosquitos, flies, insects,

and bugs which made living at New Line intolerable.    Plaintiffs

---

[1]    Lawrence Auch, Bruce Bennett, James Bourget, Kevin Brown,
Lloyd Cayman, Jose Garcia, Luke Janusz, Eric Knowles, Juan Muniz,
Stanley Matus, Jr., Dennis Paiva, Nelson Rodrigues, Philip Rogers,
Robert J. Simmington, Jr., Jose Solivan, Terrell Walker, Rudolph
West, Paul Woodley, Ronald Chambers, Randolph Clough, Antone Costa,
John DeDominicis, David Edwards, Lance Ekstrom, Roger Galio, Jose
Garcia, Thomas Gerraughty, William Lewis, Gary Melanson, Michael
Nelson, Gerald Pini, Andrew Puopolo, Jose Tavares, Larry Taylor,
Charles Thompson, Lawrence Trant, Gregory Washington, Richard
Whelan.  All of the plaintiffs are or were in the custody of the
Department of Corrections.

[2]    Larry  E.  DuBois,  Commissioner  of  Correction,
Massachusetts  Department  of  Correction;  Paul  DiPaolo,
Superintendent, Massachusetts Correctional Institution at Concord;
Edward McDonald, Director of Engineering Services, Massachusetts
Correctional Institution at Concord; Kathleen O'Toole, Secretary of
Public Safety, Department of Public Safety.

[3]    None of the plaintiffs currently reside at New Line.

1

*EXHIBIT*   D

seek declaratory and compensatory relief. Defendants, administrators for the Department of Corrections ("DOC") and other state officials, move to dismiss and for summary judgment. For the following reasons, defendants' motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6) is **ALLOWED**.

## BACKGROUND

For purposes of this motion, the court accepts as true the facts, taken from plaintiffs' complaint. On June 30, 1994, plaintiff Wayne B. Alexander complained to defendant Paul DiPaolo, Superintendent, Massachusetts Correctional Institution at Concord ("DiPaolo") that he and other prisoners were being attacked in their New Line cells by mosquitos, insects, other bugs, and vermin.[4] The reason, according to plaintiffs, was a lack of screens on their cell windows. On July 15, 1994, Alexander also notified defendant Larry E. DuBois, Commissioner of Correction, Massachusetts DOC ("DuBois"), of the insect infestation and resultant "health risk." On July 13, 1994, Howard S. Wensley, director of Community Sanitation for the Department of Health wrote Alexander stating that he was in receipt of his complaint. Wensley notified DiPaolo regarding Alexander's complaint, however, nothing was done to replace the screens while plaintiffs were incarcerated at New Line.

## DISCUSSION

For purposes of Mass. R. Civ. P. 12(b)(6), the court must take

---

[4] For purposes of this decision, these terms are used interchangeably.

2

the factual allegations of the complaint, as well as inferences which can be drawn from those allegations in plaintiff's favor, as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. The complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitled [them] to relief." Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Plaintiffs[5] appear as pro se litigants, therefore their complaint is liberally construed, Haines v. Kerner, 404 U.S. 519, 520-521 (1972). Pro se plaintiffs, however, are still required to plead specific facts to support their claims of civil rights violations. Glaros v. Perse, 628 F.2d 679 (1st Cir. 1980).

Plaintiffs argue that living conditions in New Line were intolerable due to an infestation of mosquitos, flies, bugs, and other "vermin" that entered their cells through screen-less windows. In addition, plaintiffs contend that the close proximity of a garbage dumpster to New Line attracted pests to their cells. They claim these conditions violated their civil rights under the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution and the Massachusetts Declaration of Rights. They also allege that

---

[5]    The plaintiffs in this case include both convicted prisoners and pre-trial detainees. Although pre-trial detainees may not be subjected to punishment at all, Ingraham v. Wright, 430 U.S. 651, 671-672 n. 40 (1977), convicted prisoners may be punished so long as the punishment is not cruel and unusual. See Abdullah v. Secretary of Pub. Safety, 42 Mass. App. Ct. 387, 393 (1997). For purposes of this action, however, the distinction between pre-trial detainees and prisoners is not relevant because the claims are moot.

3

defendants' failure to install screens was a violation of various
health regulations and subjected plaintiffs to a higher risk of
infection, disease, and sickness.

Defendants argue plaintiffs have failed to establish a claim
under either the U.S. Constitution, the Massachusetts Declaration
of Rights, or Massachusetts Department of Health Regulations; that
plaintiffs claim is moot; and that defendants are entitled to
qualified immunity.

A.   Mootness

The court recognizes that none of the defendants are currently
housed in New Line and, for that reason, any claim for declaratory
or injunctive relief is moot.   Blake v. Massachusetts Parole Bd.,
369 Mass. 701, 703 (1976) (ordinarily, litigation is considered
moot when the party who claimed to be aggrieved ceases to have a
personal stake in its outcome).   Further, plaintiffs are without
standing to assert the claims listed in their complaint on behalf
of other prisoners currently residing at New Line.   Third-party
standing will be allowed in limited circumstances if (1) the third-
party's rights are "inextricably bound up with the activity the
litigant wishes to pursue,' and (2) a genuine obstacle bars the
third-party from asserting a right himself.   See Singleton v.
Wulff, 428 U.S. 106, 114 (1976); Eisenstadt v. Baird, 405 U.S.
438, 444 (1971).   Plaintiffs have not shown that these factors
exist, therefore they may not assert their claims on behalf of
those inmates currently incarcerated at New Line.   See Gilmore v.
Utah, 429 U.S. 1012, 1017 (1976).

4

Any claim for monetary relief is also moot because plaintiffs have demonstrated no legally redressible injury. <u>Blake</u>, 369 Mass. at 703. Bug bites that occurred three summers ago, in and of itself, do not constitute a legally cognizable injury entitling plaintiffs to monetary relief. Plaintiffs have not demonstrated that they suffered actual infection, disease, or other injury from mosquitos and bug bites, therefore plaintiffs' claims for compensatory relief must be dismissed on mootness grounds. <u>Id</u>.

When an issue is "capable of repetition, yet evading review," however, the court will take an opportunity to address the substance of the complaint. <u>Stokes</u> v. <u>Superintendent, Massachusetts Correctional Institute, Walpole</u>, 389 Mass. 883, 887 (1983). Assuming that plaintiffs' claims were not moot and could be redressed, plaintiffs still fail to state a claim under the U.S. Constitution, the Massachusetts Declaration of Rights, or the Massachusetts Department of Public Health regulations.

**B. Prison Health and Sanitation Regulations**

Plaintiffs allege violations of the prison health and sanitation regulations. See, e.g., 105 CMR 451.141.[6] Prison health and sanitation regulations do not enable a private cause of action. <u>Attorney General</u> v. <u>Sheriff of Worcester County</u>, 382 Mass. 57, 59 (1980) (the Attorney General is the appropriate party to maintain a civil action to enforce the departmental rules and

---

[6]    "Each window . . . shall have tight-fitting screens . . . to effectively block insects and rodents . . . ." 105 CMR 451.141.

5

regulations);[7] see also 105 CMR 451.409 and 410.     Therefore,
plaintiffs lack standing to assert claims under 105 CMR 451.000,
et. seq.

C.     Article 26 and Eighth Amendment Claims

        Plaintiffs also assert an Eighth Amendment claim as well as a
claim under Article 26 of the Massachusetts Declaration of Rights
for "cruel and unusual punishment" in violation of their civil
rights.  The bug infestation, they allege, created conditions that
made the risk of disease, infection, and injury pervasive,
constituting a "cruel and unusual punishment."

        Under the Eighth Amendment, convicted criminals may be subject
to punishment which is not cruel and unusual.  Bell v. Wolfish, 441
U.S. 520, 535 (1979).  Similarly, Article 26 of the Massachusetts
Declaration of Rights prohibits "cruel and unusual punishment."
Massachusetts courts have concluded that Article 26 rights are co-
extensive with rights guaranteed by the U.S. Constitution's Eighth
Amendment.     See, e.g., Abdullah, 42 Mass. App. Ct. at 394.
Therefore, the same legal analysis applies.

        The Eighth Amendment applies to the states through the
Fourteenth Amendment due process clause and prohibits "cruel and
unusual punishment."  Robinson v. California, 370 U.S. 660, 666
(1962).

---

        [7]     Violation of prison health and sanitation regulations
also does not rise to a per se constitutional violation.
Richardson v. Sheriff of Middlesex County, 407 Mass. 455, 460
(1990), but may be objective evidence of conduct violative of civil
rights.     Id.; see also Michaud v. Sheriff of Essex County, 390
Mass. 523, 531 (1983).

6

> A prison official violates the Eighth Amendment when two
> requirements are met.  First, the deprivation alleged
> must be, objectively, 'sufficiently serious' . . . [it]
> must result in the denial of the 'minimal civilized
> measure of life's necessities.'  Farmer v. Brennan, 511
> U.S. 825, 834 (1994).  Second, the prison official must
> have a sufficiently culpable state of mind, that is, the
> official must have "deliberate indifference" to the
> inmate's health or safety.  Id.  Thus, to be held liable
> under the Eighth Amendment for denying an inmate humane
> conditions of confinement, a prison official must know
> and disregard an excessive risk to inmate health or
> safety.

Abdullah, 42 Mass. App. Ct. at 394 (citations and quotations

omitted) (emphasis added).

Plaintiffs fail to establish the objective component of the

Eighth Amendment test for cruel and unusual punishment.  The court

does not doubt that if the plaintiffs' current prison cells were

continually infested with mosquitos, flies, and bugs, then they

might state viable Eighth Amendment claim.  See, e.g., Hutto v.

Finney, 437 U.S. 678, 686-687 (1979) (prison conditions which might

be tolerable for a few days may be intolerably cruel for weeks or

months).  But here, none of the plaintiffs currently live at New

Line, therefore they cannot bring an Eighth Amendment action for

past exposure to a summer bug infestation or mosquito bites.

Plaintiffs also allege no resulting current injury, disease or

infection from these bites that rise to the level of an Eighth

Amendment violation.  See Bell, 441 U.S. at 542.

Plaintiffs also fail to establish the subjective component of

a cognizable Eighth Amendment claim.  Plaintiffs allege no facts

that would support a reasonable inference that defendants

intentionally desired to subject plaintiffs to a substantial risk.

Farmer, 511 U.S. at 834. Without a demonstration of "deliberate indifference" on the part of prison and health officials, plaintiffs cannot establish the subjective component of their Eighth Amendment claim. Id.

### D. Due Process Claims

Plaintiffs also claim that defendants violated the Fifth Amendment's due process clause. The Fifth Amendment's due process clause, however, limits only federal action. See, e.g., Bartkus v. Illinois, 359 U.S. 121 (1959). The plaintiffs raise no claim against federal officials, therefore their Fifth Amendment due process claim against the defendants must be rejected.

Plaintiffs also raise a Fourteenth Amendment due process claim. Pretrial detainees,[8] while not protected by the prohibition against "cruel and unusual punishment" pursuant to the Eighth Amendment, are guaranteed substantive due process under the Fourteenth Amendment. Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). Massachusetts courts, like federal courts, have analogized the due process rights of pre-trial detainees to the Eighth Amendment rights of convicted prisoners. See Miga v. City of Holyoke, 398 Mass. 343 (1986). Pretrial detainees "retain at least those constitutional rights that . . . are enjoyed by convicted prisoners." Bell, 441 U.S. at 535 n. 16.

Applying this analogy to the plaintiffs in this case who are pre-trial detainees, Miga, 398 Mass. at 351, the court holds that

---

[8]    Pre-trial detainees are in custody pursuant to G.L. c. 276, § 52A.  The statute has been held to be constitutional. Mendonza v. Commonwealth, 423 Mass. 771 (1996).

8

they have not demonstrated that the conditions of mosquito and bug infestation violate the objective "standards of decency which mark the progress of society." <u>Good</u> v. <u>Commissioner of Correction</u>, 417 Mass. 329, 335 (1994). The infestation occurred over three summers ago and no plaintiff claims to be currently suffering actual injury, disease, or infection as a result of that infestation. It is also not a reasonable inference that defendants purposely caused plaintiffs injury, disease, or infection by allowing mosquitos and other bugs to "feast" on plaintiffs. For those reasons, the plaintiffs' Fourteenth Amendment due process claim is rejected. Compare <u>Michaud</u>, 390 Mass. at 533-534 (unsanitary human waste disposal systems violated pre-trial detainees Fourteenth Amendment due process rights).

<u>ORDER</u>

For the foregoing reasons, it is <u>ORDERED</u> that defendants' motion to dismiss plaintiffs' complaint be <u>ALLOWED</u>.

Wendie I. Gershengorn
Justice of the Superior Court

DATED:    November 17, 1997

9

Entered Pcso 18 Nov 1997