UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

FILED
IN CLERKS OFFICE
2005 FEB 25 P 2:27

CIVIL ACTION NO. 04-30177 KPN
U.S. DISTRICT COURT
DISTRICT OF MASS.

JOEL PENTLARGE,
    Plaintiff

v.

ROBERT MURPHY, et al.,
    Defendants.

### ANSWER OF DEFENDANTS AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 12(b)(6)

#### ANSWER

Now come the Defendants, Natalya Pushkina and Deborah O'Donnell, in the above-captioned matter and, pursuant to Federal Rule of Civil Procedure 7(a) and 8(b), in response to the Plaintiff's Complaint dated September 3, 2004, and Amended Complaint dated September 20, 2004, file this Answer, to wit:

**Plaintiff's Complaint:**

1. The Plaintiff's Complaint dated September 3, 2004, makes no averments relating to the Defendants Pushkina or O'Donnell. The Defendants therefore state, pursuant to Federal Rule of Civil Procedure 8(b), that they are without knowledge or information sufficient to form a belief as to the truth of the averments numbered one (1) through ninety-four (94).

**Plaintiff's Amended Complaint:**

2. As set forth above, the Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment numbered ninety-five (95).

3. Regarding the Plaintiff's averment numbered ninety-six (96), the Defendant Natalya Pushkina (hereafter, Pushkina) states that she is a librarian at the Massachusetts Treatment Center (formerly known as Nemansket Correctional Center). Pushkina is employed by Forensic Health Services, which contracts with the Massachusetts

1

Treatment Center for the treatment of sexually dangerous persons in an attempt to reduce sex offense recidivism.

4. Regarding the Plaintiff's averment numbered ninety-seven (97), the Defendant Deborah O'Donnell (hereafter, O'Donnell) states that she is the Director of Rehabilitation at the Massachusetts Treatment Center. O'Donnell is employed by Forensic Health Services, which contracts with the Massachusetts Treatment Center for the treatment of sexually dangerous persons in an attempt to reduce sex offense recidivism.

5. Regarding the Plaintiff's averment numbered ninety-eight (98), the Defendants state that they are employees of Forensic Health Services, Inc., (hereafter, FHS) which is a licensed corporation in the state of Massachusetts; FHS contracts with the Massachusetts Treatment Center for the treatment of sexually dangerous persons in an attempt to reduce sex offense recidivism.

6. The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment numbered ninety-nine (99).

7. Regarding the Plaintiff's averment numbered one hundred (100), the Defendant Pushkina states that during September, 2004, the Plaintiff presented to her for copying a form labeled 'Notice of Lawsuit'; Pushkina does not have any specific memory of the exact date, but does not deny that this may have occurred on September 17, 2004.

8. Regarding the Plaintiff's averment numbered one hundred and one (101), the Defendant Pushkina states that upon review of the document she became concerned that it was not an original legal document, and she brought said document to her supervisor, Defendant O'Donnell.

9. Regarding the Plaintiff's averment numbered one hundred and two (102), the Defendants state that after consultation, they determined that the document was not an original legal document and could not be copied upon the Plaintiff's request, in accordance with 103 CMR 478.11(4) and Massachusetts Treatment Center Procedural Attachment to 103 CMR 478, section VII.

10. Regarding the Plaintiff's averment numbered one hundred and three (103), the Defendant Pushkina states that after consultation with O'Donnell, she informed the

Plaintiff that a copy could not be made because it was not an original legal document.

11. The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment numbered one hundred and four (104).

12. Regarding the Plaintiff's averment numbered one hundred and five (105), the Defendant Pushkina states that during September, 2004, the Plaintiff presented to her for copying his original complaint in this action and requested that copies be made for the original defendants in the case, for several attorneys and for reporters from three newspapers. Pushkina does not have any specific memory of the exact date, but does not deny that this may have occurred on September 7, 2004. Pushkina states that copies were made for the Plaintiff's original defendants and for several attorneys. Pushkina states that after consultation with O'Donnell, the decision was made that the copies for the reporters could not be made as the intended receiving parties did not qualify under 103 CMR 478.11(4) and Massachusetts Treatment Center Procedural Attachment to 103 CMR 478, section VII.

13. Within the Plaintiff's averment numbered one hundred and seven (107), there are five sentences. As to the sentence numbered one, the Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the Plaintiff's averment that on September 2, 2004, he wrote a letter to the Superintendent. As to the sentence numbered two, the Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the averment that he attached a copy of a court decision to said letter. As to the sentence numbered three, the Defendants state that as employees of the library, they discard material once it has become outdated or has become integrated into a bound volume. As to the sentence numbered four, the Defendants admit that the Plaintiff asked for a copy of his letter to send to his attorney; the Defendants state that said requested copy was provided to the Plaintiff. As to the sentence numbered five, the Defendants state that they refused to make a copy of the court decision, in accordance with 103 CMR 478.11(4) and Massachusetts Treatment Center Procedural Attachment to 103 CMR 478, section VII.

3

14. The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment numbered one hundred and eight (108).

15. The Defendants deny the averment numbered one hundred and nine (109), labeled by the Plaintiff as 'Additional Causes of Action'.

16. Regarding the Plantiff's averments set forth and labeled as 'Additional Relief', the Defendants state that they are without knowledge or information sufficient to form a belief as to whether the Plaintiff is entitled to the relief requested in the original complaint. The Defendants state that the Plaintiff is not entitled to the relief numbered one (1) through three (3) in the Plaintiff's section labeled 'Additional Relief'.

### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 12(b)(6)

The Defendants, Natalya Pushkina and Deborah O'Donnell, respectfully request that this Honorable Court, pursuant to Federal Rule of Civil Procedure, 12(b)(6), dismiss the Plaintiff's claims, as they fail to state a claim for which relief can be granted. As reason therefore, the Defendants state the following.

### ARGUMENT

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which fail to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, the court must "accept the well pleaded averments of the . . . complaint as true, and construe these facts in the light most favorable to the [plaintiff]." Congris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir.1987). Such a motion will only be granted when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d. 80 (1957). In evaluating a 12(b)(6) motion, "a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992). Unverifiable conclusions, not supported by the stated facts, deserve

4

no deference. *Id.* The inquiry at the heart of this analysis is whether the plaintiff's Complaint sets forth sufficient factual allegations which, if proven, would support his claims. As set forth below, it does not.

The Plaintiff's Allegations: The Plaintiff's allegations center around three separate incidents relating to photocopying requests made by him of Defendants Pushkina and O'Donnell. See Paragraphs 99-107 of the Plaintiff's Amended Complaint. In summary, these incidents involve the Defendants' determination that it would be a violation of 103 CMR 478.11(4) and Section VII of the Massachusetts Treatment Center Procedural Attachment to 103 CMR 478 for them to (1) make a photocopy of a form captioned "Notice of Lawsuit,"; (2) make photocopies of the Plaintiff's original complaint for reporters from three newspapers; and (3) make a photocopy of a court case.

The relevant CMR provisions and Procedural Attachment provisions are set forth as follows:

**103 CMR 478.11(4):**
Photocopies: (a) Photocopying services shall be for the purpose of duplicating original legal documents and for the purpose of increasing access to the legal collection. (emphasis supplied).

(b) All photocopy requests shall be compiled within reasonable amounts at no charge. In order to provide photocopying services to all inmates, the superintendent may establish guidelines and limits, subject to the review of the Commissioner or his/her designee. (emphasis supplied).

**Mass. Treatment Center Procedural Attachment to 103 CMR 478:**
Section VII: Legal Copying: Original legal material will normally be copied Monday through Friday depending on staff availability and/or supplies. (emphasis supplied).

Section VII (f): A maximum of four (4) copies of each personal legal material may be copied. The only exception will be when legal necessity requires a specific number. Legal book materials will not be copied. Blank forms will not be copied.

The Plaintiff's Amended Complaint alleges violations of 42 U.S.C. § 1983, which creates a cause of action against individuals who, acting under color of state law, violate federal law. 42 U.S.C. § 1983. In order to maintain an action under §1983, the conduct complained of must have deprived the plaintiff of a constitutional right or a federal statutory

5

right. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980). The Plaintiff claims that the Defendants Pushkina and O'Donnell denied him his freedom of expression, his freedom of the press, his right to seek redress of grievances and his right to access the courts, in violation of his rights under the First and Fourteenth Amendments. (Amended Complaint, p.4).

The Plaintiff incorrectly asserts that he was "entitled" to the photocopies he requested. See Paragraph 109 of the Plaintiff's Amended Complaint. As set forth above, the applicable provision of the CMR, as well as the Mass. Treatment Center Procedural Attachment to that CMR, clearly provide that the Defendants are not permitted to make photocopies of any documents that are not original legal documents or materials. The regulations also provide that "a maximum of four (4) copies of each personal legal material may be copied," and that the only exception to this is "when legal necessity requires" additional copies. Finally, the regulations clearly and specifically state that "[l]egal book materials will not be copied." In each of the three incidents that serve as the basis for the Plaintiff's allegations, the Defendants acted properly and in accordance with the applicable regulations.

The incident arising on September 17, 2004[1]: The Plaintiff's own complaint states that the document he wanted photocopied was not an original legal document. He requested that the Defendants photocopy a "Notice of Lawsuit" form that he had "used in prior federal litigation" and that had been altered by him by his act of "pasting over the names of the defendants and the docket number and date, and typing in the names of the three original defen[d]ants in this action, the docket number and the current date." As the Plaintiff himself asserts, the document he wished to have photocopied was not an original legal document and the Defendants acted properly and in accordance with the applicable regulations in denying his request. 103 CMR 478.11(4), and Section VII of the Mass. Treatment Center Procedural Attachment to 103 CMR 478.

The incident arising on September 7, 2004: Again, the Plaintiff's own complaint answers the question of whether the Defendants acted in accordance with the applicable regulations. The Plaintiff asserts that he requested that the Defendants make photocopies of

---

[1] As to the dates of the incidents underlying the Plaintiff's allegations, the Defendants state that they do not specifically recall on what date each of these incidents occurred. They state, however, that they do not have any reason to believe that the dates attached to each incident by the Plaintiff are incorrect.

his original complaint in the within action. Specifically, the Plaintiff "requested copies of the complaint for the original defendants, several attorneys <u>and reporters for the Boston Globe, the Springfield Republican and the Ware River News</u>." (emphasis supplied). The Defendants provided photocopies for the original defendants and for the attorneys, but refused to provide copies for the reporters. This was proper and in accordance with the regulation which provides that there is to be a limit on the number of copies of "personal legal material"; exceptions may be made, but a "legal necessity" is required. Section VII (f) of the Mass. Treatment Center Procedural Attachment to 103 CMR 478. The Plaintiff's desire to disseminate copies of his complaint to several media outlets was not a legal necessity, and the Defendants acted properly in denying that request.

<u>The incident arising on September 2, 2004</u>: Finally, the Plaintiff's complaint again provides the answer to the question of whether the Defendants acted properly in this instance. The Plaintiff asserts that he wrote a letter to the Superintendent on the issue of telephone access, and that he attached to that letter "a copy of the decision in <u>Young</u> v. <u>Selling</u>, [citation omitted], which deal[t] directly with the right of civil committed persons to telephone access." The Plaintiff requested that the Defendants photocopy the letter and the court case "to send to the plaintiff's attorney, John Swomley." The Defendants photocopied the letter, but denied his request to photocopy the court case; this was in accordance with the applicable regulation, which provides that "[l]egal book materials will not be copied." Section VII (f) of the Mass. Treatment Center Procedural Attachment to 103 CMR 478.

As set forth above, the Plaintiff was not "entitled" to the requested photocopies because in each instance it would have been a violation of the applicable regulations for the Defendants to provide said copies. The Defendants at all times acted properly and in accordance with the applicable regulations.

<u>Right to Seek Redress of Grievances and Access the Courts</u>[2]: There is no doubt that inmates have a constitutionally protected right of meaningful access to the courts. <u>Bounds</u> v. <u>Smith</u>, 430 U.S. 817, 828 (1977). This right "requires prison authorities to assist inmates

---

[2] "The First Amendment guarantees every citizen the right 'to petition the Government for a redress of grievances." U.S. CONST. Amend.I. This right to petition extends to all departments of the government, <u>Cardtoons</u> v. <u>Marjor League Baseball Players Association</u>, 208 F.3d 885, 890 (10th Cir.2000), including the right to access the courts. <u>California Motor Transport</u> v. <u>Trucking Unlimited</u>, 404 U.S. 508, 510, 92 S.Ct. 609; <u>Laaman</u> v. <u>Perrin</u>, 435 F.Supp. 319 (D.N.H. 1977).

7

in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from person trained in the law." Carter v. Fair, 786 F.2d 433, 435 (1st Cir.1986), quoting from Bounds, supra. "While a prison inmate retains a right of access to the courts, to establish a claim he must allege that he suffered actual injury as a result of defendants' actions." Carter v. Fair, supra; See also Lewis v. Casey, 518 U.S. 343, 351-352 (1996).

In this case, the Plaintiff has failed to even allege any actual injury that resulted from the Defendants' enforcement of the photocopying regulations. At the heart of the Plaintiff's contention is the claim that the denial of his photocopying requests prevented him from pursuing his claims against the Massachusetts Department of Correction. The Plaintiff has clearly **not** been prevented from pursuing these claims; evidence of that fact is the above captioned action. See Guglielmo v. Cunningham, 811 F.Supp. 31, 35-36 (1993). Furthermore, the Plaintiff has failed to show any actual injury relating specifically to the three incidents: First, it must be assumed that the Plaintiff successfully filed a "Notice of Lawsuit" form; nowhere in the Plaintiff's Amended Complaint does he state that his action was dismissed or impaired for failure to file the form. Second, the Plaintiff's inability to obtain library assistance in disseminating copies of his original complaint to several media outlets is absolutely unrelated to his ability to pursue his legal claims in court. Likewise, the Plaintiff's inability to obtain library assistance in attaching a copy of a court case to correspondence to his lawyer (an individual who, as an attorney, undoubtedly had access to the case) is unrelated to his ability to pursue his legal claims in court. Because the Plaintiff has failed to demonstrate that the photocopying regulations "compromised his ability to litigate a specific claim," his claims must fail. See Graham v. Cattell, 2005 WL 67065 (held that incarcerated individual's claim under 42 U.S.C. § 1983 regarding photocopying policy must fail where he failed to offer evidence that the "policy compromised his ability to litigate a specific claim").

"Even if a prison regulation, policy or practice hinders a prisoner's ability to access the courts, it may be upheld if what is challenged bears a rational relationship to legitimate penological interests." Graham v. Cattell, 2005 WL 67065, citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). Judicial decisions have identified four factors relevant to the analysis: (1) Does the regulation have a "valid rational

connection" to a governmental interest? (2) Are their alternative means open to those incarcerated to exercise the asserted right? (3) What would be the impact on guards, inmates and prison resources if the right was to be accommodated? (4) Are there ready alternatives to the regulation? Overton, 539 U.S. at 132, quoting Turner v. Safety, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

The photocopying regulations serve a legitimate penological interest as they prevent abuse of library resources by preventing incarcerated individuals from using library resources for purposes unrelated to their pursuit of legal claims. The Massachusetts Treatment Center takes very seriously its responsibility to provide to inmates assistance in "preparing and filing legal papers." See 103 CMR 478.11. Toward that end, the photocopying regulations have been put in place and are enforced so as to allow the facility to continue to provide necessary services to inmates. If resources are abused, and used for purposes unrelated to the pursuit of legal claims, then the facility would be prevented from providing library assistance. The minor limitations on what can and cannot be photocopied are among the least intrusive alternative available to the facility. Even if the Plaintiff could demonstrate that the photocopying regulations hindered his ability to litigate his claims, his allegations would still fall short because he cannot demonstrate that the regulations do not serve the legitimate penological interest of reasonably allocating library resources so as to ensure that the facility can continue to provide legal assistance to incarcerated individuals.

Freedom of Expression and Freedom of the Press: The Plaintiff alleges that the Defendants, by their enforcement of the photocopying regulations, violated his "rights of freedom of expression [and] freedom of the press." (Plaintiff's Amended Complaint, p.4). The Plaintiff's freedom of expression to litigate his claims, within his Original as well as his Amended Complaints, has not been violated in any way. As set forth above, the existence of the Plaintiff's ongoing litigation in this case is evidence of the fact that he has suffered no actual injury as a result of the alleged violations. See Guglielmo v. Cunningham, 811 F.Supp. 31, 35-36 (1993) (no violation of freedom of expression to litigate where the court noted that the "plaintiff continues to fully litigate at least two civil rights cases from [prison]").

Even if the Plaintiff has standing to assert a violation of the freedom of the press, his claim in the within action is still without merit. In accordance with the photocopying

9

regulations (which, as set forth above, serve a legitimate penological interest) the Defendants denied the Plaintiff's request to make photocopies of his original complaint for dissemination to several newspapers. The Defendants, however, did not violate the Plaintiff's right to communicate with the media. See Nolan v. Fitzpatrick, 451 F.2d 545 (1971). There was absolutely nothing standing in the way of the Plaintiff's efforts (should he choose to do so) to communicate with the reporters from the Boston Globe, the Springfield Republican or the Ware River News. Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (regulation banning media interviews with certain inmates upheld where court noted that inmates still had the available alternative to communicate with the media via mail).

## CONCLUSION

For the reasons set forth above, the Plaintiff's Amended Complaint should be dismissed because it fails to state a claim for which relief can be granted. The Plaintiff's own Complaint informs this Honorable Court that he was not entitled to the requested photocopies. He requested a photocopy of a document which was not an original legal document; he requested photocopies of his complaint for dissemination to several newspapers; and he requested a photocopy of a court case - - each of these requests was specifically prohibited under the applicable regulations. As such, the Defendants acted properly. The regulations at issue are rationally related to the legitimate penological interest of allocating library resources so that the facility can continue to provide assistance to inmates in preparing and filing legal papers. Finally, the Plaintiff is unable to demonstrate any actual injury in that he cannot show that the regulations compromised his ability to litigate his claims.

The Defendants respectfully request that this Honorable Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, DISMISS the Plaintiff's Amended Complaint as it fails to state a claim for which relief can be granted.

Respectfully submitted
For the Defendants,

Kevin W. Mulvey (B.B.O. # 642914)
Mulvey & Sneider, LLP
1622A Beacon Street
Brookline, MA 02445
617-278-1881

Dated: February 25, 2005

## CERTIFICATE OF SERVICE

I, Kevin W. Mulvey, hereby certify that a copy of the above Answer and Motion to Dismiss was sent via first class mail to Attorney Mary Murray, representing the Defendants, the Massachusetts Department of Correction, Robert Murphy and Kathleen Dennehy and to Plaintiff, Joel Pentlarge both at the Bridgewater Treatment Center, 30 Administration Road, Bridgewater, MA 02324-3230.

Kevin W. Mulvey (B.B.O. # 642914)
Mulvey & Sneider, LLP
1622A Beacon Street
Brookline, MA 02445
617-278-1881

Dated: February 25, 2005

11