UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------X

JOEL PENTLARGE,                                      :
    Plaintiff                                      :

    v.                                                 :          CIVIL ACTION NO. 04-30177-PBS

ROBERT MURPHY, et al.                          :
    Defendants                                    :

----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS ROBERT MURPHY AND KATHLEEN DENNEHY'S
MOTION TO DISMISS THIRD SUPPLEMENTAL COMPLAINT**

**I.      INTRODUCTION**

Defendants Robert Murphy and Kathleen Dennehy, (collectively, the "DOC

Defendants") have moved to dismiss plaintiff's Third Supplemental Complaint and Count IX of

the Complaint as it relates to them.  At issue are plaintiff's allegations that the DOC Defendants

have violated his fundamental constitutional rights including: (1) his right of access to the courts

under the First and Fourteenth Amendments to the United States Constitution and the Privileges

and Immunities Clause of Article IV; and (2) his right to freedom of speech under the First

Amendment to the United States Constitution.  The DOC Defendants claim that dismissal is

appropriate under Fed. R. Civ. P. 12(b)(6) because:

> [P]laintiff . . . makes no specific claim of an actual, substantial injury.  Indeed, the
> plaintiff makes no specific allegation that he sought to acquire copies of these cases
> to pursue his own legal matters involving his conviction or conditions of
> confinement.  Accordingly, [plaintiff's claim for interference with his access to the
> courts] must be dismissed.

DOC Defendants Memorandum of Law in Support of Motion to Dismiss, ("DOC Memo"), at

p. 3.  With respect to plaintiff's claim for violations of his free speech rights under the First

Amendment, the DOC Defendants reason:

> [P]laintiff was not prevented from communicating with his brother or the other unnamed person who sent the other e-mailed materials to the plaintiff. Rather, the plaintiff was not permitted to communicate by receipt of the e-mailed material. The plaintiff retained other ways to communicate with his brother, including by telephone and correspondence. Likewise, the plaintiff was not precluded from communicating with anyone else. Indeed, he has not claimed that he was even prevented from obtaining copies of these cases. Rather, he has merely claimed that he was not able to obtain these documents in e-mailed form through incoming non-privileged mail. Accordingly, the plaintiff has failed to state a claim upon which relief may be granted.

DOC Memo at pp. 3-4.  Finally, the DOC Defendants claim qualified immunity, taking the position that the application of 103 CMR 403, Inmate Property Policy, and 103 CMR 481, Inmate Mail, to civilly committed individuals such as the plaintiff here, has been specifically approved by the federal court by virtue of its having approved of the "Amended Management Plan" in King v. Greenblatt, 53 F. Supp. 117 (D. Mass. 1999).  Consequently, the DOC Defendants claim, plaintiff cannot establish that the DOC Defendants deprived him of a federally protected right that was clearly established at the time of the alleged conduct.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987); DOC Memo at pp. 4-5.

## II.    ARGUMENT

The standard upon review of dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is whether, construing the complaint in the light most favorable to the plaintiff, dismissal is appropriate because it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In ruling on a 12(b)(6) motion, the court must "accept the well pleaded averments of the . . . complaint as true, and construe these facts in the light most favorable to the [plaintiff]."

Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

A.    **Denial of Access to the Courts**

The United States Supreme Court has found a right of access inherent in numerous

constitutional provisions, including the Due Process Clauses, the Privileges and Immunities

Clause of Article IV, and the First Amendment.  See Boddie v. Connecticut, 401 U.S. 371, 377

(1971) (Due Process Clause "requires, at a minimum, that absent a countervailing state interest

of overriding significance, persons forced to settle their claims of right and duty through the

judicial process must be given a meaningful opportunity to be heard"); Chambers v. Baltimore &

Ohio R.R. Co., 207 U.S. 142, 148 (1907) ("the right to sue and defend in the courts is . . . one of

the highest and most essential [Art. IV] privileges of citizenship"); California Motor

Transportation Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) (right to petition gives rise

to a right of access to the justice system).  Moreover, the U.S. Supreme Court has made clear that

this right of access is a right of equal access.  See Griffin v. Illinois, 351 U.S. 12, 16 (1956).

The DOC Defendants' lone citation of support for denying plaintiff access to the courts,

by denying him complete copies of case law not contained in the law library at the Nemansket

Correctional Center otherwise known as the Massachusetts Treatment Center, (hereinafter

referred to as "OCC"), is Lewis v. Casey, 518 U.S. 343 (1996).  Lewis was a class action in

which the district court, relying on Bounds v. Smith, 430 U.S. 817 (1977) (requiring adequate

law libraries or legal assistance), entered a sweeping injunction to improve law libraries and

legal assistance programs in Arizona prisons.  In striking down the injunction, the U. S. Supreme

Court held that a **prisoner** alleging a Bounds violation must show "actual injury."  Lewis, 518

U.S. at 349.  Thus, to establish a claim of inadequate access to the courts under Bounds, an

**inmate** is required to show "that the alleged shortcomings in the library or legal assistance

program hindered his efforts to pursue a legal claim" -- for example, by demonstrating that he

has been unable to file a complaint or has had a complaint dismissed for failure to observe a

technicality. Id. at 351.

First, plaintiff here is a civil litigant; a status that undoubtedly bears on the constitutional

analysis required in this case. As the U.S. Supreme Court has observed, a civilly committed

individual is "entitled to more considerate treatment and conditions of confinement than

criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457

U.S. 307, 321-322 (1982). At the very least, due process requires that the DOC Defendants'

actions restricting plaintiff's mail and interfering with his right of access to the courts, "bear

some reasonable relation to the purpose for which persons are committed." Seling  v. Young,

531 U.S. 250, 265 (2001), citing Foucha v. Louisiana, 504 U.S. 71, 79 (1992); Youngberg v.

Romeo, supra; and Jackson v. Indiana, 406 U.S. 715, 738 (1972).

Plaintiff has been involuntarily committed to Massachusetts' version of what is supposed

to be a residential, post-incarceration sexual treatment program. The DOC Defendants are

operating the OCC like a correctional facility, with such purpose and effect as enacted by the

Legislature. See G.L. c. 123A, § 2.[1]  Plaintiff has sued the DOC Defendants because they are

---

[1]      G.L. c. 123A, § 2 provides in pertinent part:

> Nemansket Correctional Center; Treatment of Sexually Dangerous Prisoners. The
> commissioner of correction shall maintain subject to the jurisdiction of the
> department of correction a treatment program or branch thereof at a correctional
> institution for the care, custody, treatment and rehabilitation of persons adjudicated
> as being sexually dangerous. Said facility shall be known as the "Nemansket
> Correctional Center". . . .  The commissioner of correction shall have the authority
> to promulgate regulations consistent with the provisions of this chapter.

responsible for the intended, but unconstitutional, prison-like conditions of confinement he

presently endures as a civil commit at the OCC.  While it may be argued that correctional

regulations and policies such as those governing "Inmate Mail"[2] and "Inmate Property"[3] may be

applied to individuals at the OCC who are still serving criminal sentences regardless of their

practical effects, the DOC Defendants cannot justify the application of these regulations and

policies to a civilly committed individual such as plaintiff, when the practical and obvious result

is punishment in the form of the denial of equal and effective access to the courts.  As the First

Circuit made clear in King v. Greenblatt, the "DOC [does not have] carte blanche to do anything

it wishes, for the Original Decree remains unmodified in its requirement that patients at the

Treatment Center . . . have the least restrictive conditions necessary to achieve the purposes of

commitment.  This provision is the substantive essence of the Original Decree."  149 F.3d 9, 15

(1st Cir. 1998).  The DOC Defendants should not be permitted to implement policies that

virtually eviscerate the Original Decree, and then demand that a civilly committed individual be

required to show actual injury.  And in fact, were this Court to require a showing of actual injury

from the DOC Defendants' actions contrabanding case law which the plaintiff requires to further

his legal action against defendants, it need only look as far as the docket sheet to see the multiple

and substantial delays in timely filed pleadings by the plaintiff.  As plaintiff expects to ultimately

prevail in his claims concerning the unconstitutional conditions of confinement at the OCC, each

day of delay caused by the unconstitutional lack of access and the improper interference with his

ability to obtain legal materials through the mail is injury directly attributable to the DOC

---

[2]    See 103 CMR 481.

[3]    See 103 CMR 403.

Defendants.

**B.**      **Freedom of Speech**

The First Amendment "embraces the right to distribute literature, and necessarily protects the right to receive it."  Martin v. City of Struthers, Ohio, 319 U.S. 141, 143 (1943).  It protects material disseminated over the internet as well as by the means of communication devices used prior to the high-tech era.  Reno v. American Civil Liberties Union, 521 U.S. 844, 868 (1997). "The right to receive publications is . . . a fundamental right.  The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them." Lamont v. Postmaster General of U.S., 381 U.S. 301, 308 (1965)(Brennan, J., concurring).

With respect to a content-neutral regulation, it may be sustained under the First Amendment only if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.  Turner Broadcasting System v. FCC, 520 U.S. 180, 188 (1997), citing United States v. O'Brien, 391 U.S. 367, 377 (1968).  "We think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  United States v. O'Brien, supra.

Here, the DOC Defendants have failed to identify any important, or substantial governmental interests that are being furthered by restricting plaintiff from receiving complete copies of case law not available in the OCC library, or written tributes to the poet Nikki

Giovanni sent by the plaintiff's deceased brother.  Moreover, even if the DOC Defendants were

able to identify such a governmental interest, they have made no showing that the corresponding

restrictions placed on plaintiff's First Amendment right to receive mail, (e.g., banning

publications that do not come directly from the publisher or a pre-approved distributor or book

club, and prohibiting plaintiff from receiving more than five pages that are attached to any one

letter,) are no greater than essential for furtherance of that as yet unspecified interest.

Accordingly, the application of the OCC's policies and regulations restricting plaintiff's mail in

this case are unconstitutional and constitute irreparable injury.  See Elrod v. Burns, 427 U.S.

347, 373-374 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury.  See New York Times Co.  v. United States, 403

U.S. 713 (1971).

   Even if this Court reviewed the DOC Defendants' policies and actions utilizing the

reasonableness standard set forth in cases interpreting prisoners' rights, see Turner v. Safley, 482

U.S. 78, 89 (1987) and Thornburgh v. Abbott, 490 U.S. 401, 407 (1989), i.e., whether the actions

of prison officials are "reasonably related to legitimate penological interests," it is clear that the

application of the DOC Defendants' policies and actions in this case are unconstitutional.  See

Thornburgh v. Abbott, supra at 404.   There is no dispute that prisoners retain their First

Amendment right to receive information while incarcerated.  Turner v. Safley, supra, 482 U.S. at

84.  ("Prison walls do not form a barrier separating prison inmates from the protections of the

Constitution.")  This First Amendment right is operative unless it is "inconsistent with [a

person's] status as a prisoner or with the legitimate penological objectives of the corrections

system."  Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129

(1977)(quoting Pell v. Procuier, 417 U.S. 817, 822 (1974)).

In determining the reasonableness of a prison policy that infringes on inmates'
constitutional rights, the Supreme Court in Turner established a four factor test to determine
whether a prison policy serves legitimate penological objectives, mandating consideration of:
(1) whether there is a valid, rational connection between the prison policy and the legitimate
governmental interest put forward to justify it; (2) whether the inmates have alternative means of
exercising their constitutional right; (3) the impact that accommodation of the constitutional
right will have on guards, other inmates, and the allocation of prison resources; and (4) whether
the absence of ready alternatives is evidence of the reasonableness of the prison regulation. See
Turner v. Safley, supra, 482 U.S. at 89-91; Thornburgh v. Abbott, supra, 490 U.S. at 414-419.

First, the DOC Defendants have failed to meet the Turner test because they have failed to
articulate any legitimate penological purpose for restricting plaintiff's mail in the above-
described manner, much less articulated a rational and logical connection between such a
purpose and policies that provide for an arbitrary limit on the number of pages that can be
received in one letter.  Second, while the very fact that plaintiff is confined to the OCC imposes
limitations on his constitutional rights, including those derived from the First Amendment, the
DOC Defendants have failed to offer any reasonable professional judgment to justify picking and
choosing between the sources from which plaintiff may obtain copies of case law.  If the content
of the information is appropriate and not detrimental to OCC security or plaintiff's treatment,
then restricting the sources from which the information may be obtained, and / or the amount of
pages plaintiff can receive in one letter, can only be attributed to the DOC Defendants personal
biases and prejudices rather than based upon their professional judgment.  Third, the DOC

Defendants have not and cannot claim any adverse impact on inmates, prison personnel, and / or

allocation of prison resources from accommodating plaintiff's First Amendment rights at issue

here.  This is particularly true where plaintiff has not even demanded that the OCC library be

required to provide the case law he finds necessary to pursue his legal action concerning

unconstitutional conditions of confinement, but instead has gone to the trouble and expense of

endeavoring to obtain copies of the necessary case law from a local law library.   Finally, the

existence of obvious, easy alternatives is evidence here that the DOC Defendants' regulations are

not reasonable, but must be an exaggerated response to an as yet to be articulated prison concern.

See Turner v. Safley, supra 482 U.S. at 90.  The DOC Defendants' practice of prohibiting more

than five pages of case law, or written tributes to a poet, to be sent to plaintiff in any one letter

violates his First and Fourteenth Amendment rights by imposing greater limitations upon First

Amendment freedoms than are necessary for the protection of any interests the government has

in security, order and rehabilitation.

### C.    **Qualified Immunity**

The DOC Defendants contend that they are entitled to qualified immunity in this case.

Qualified immunity provides "an entitlement not to stand trial or face the other burdens of

litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S.

511, 526 (1985)).  Qualified immunity is designed to protect most public officials: "it provides

ample protection to all but the plainly incompetent or those who knowingly violate the law."

Malley v. Briggs, 475 U.S. 335, 341 (1986).  As most recently explained by Justice Breyer in his

concurring opinion in Brosseau v. Haugen, the test laid out in Saucier has two basic parts:

"Saucier requires lower courts to decide (1) the constitutional question prior to deciding (2) the

qualified immunity question." 160 L. Ed. 2d 583, 125 S. Ct. 596, 2004 U.S. LEXIS 8275, No.

03-1261, 2004 WL 2847251, at *5 (Dec. 13, 2004) (Breyer, J., concurring).

The First Circuit has usually explained qualified immunity as a three-stage test by

subdividing Saucier's second stage into two distinct questions.[4]  See Abreu-Guzman v. Ford, 241

F.3d 69, 73 (2001).  The three-part test asks first: "Taken in the light most favorable to the party

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

right?"  Saucier v. Katz, supra, 533 U.S. at 201.  As to the second prong, the First Circuit has

asked "whether the right was clearly established at the time of the alleged violation" such that a

reasonable officer would "be on notice that [his] conduct [was] unlawful."  Suboh v. Dist.

Attorney's Office, 298 F.3d 81, 90 (1st Cir. 2002).  On the third prong, the First Circuit asks

whether a "reasonable officer, similarly situated, would understand that the challenged conduct

violated" the clearly established right at issue.  Id.

The Supreme Court has stated that courts should begin with the first prong, that is,

whether the facts as seen in the light most favorable to the injured party show that the officer's

conduct violated a constitutional right.  See Saucier v. Katz, supra 533 U.S. at 201; see also

Bellville v. Town of Northboro, 375 F.3d 25, 30 (1st Cir. 2004).  This first step is meant to aid in

the "law's elaboration from case to case."  Saucier v. Katz, supra.  The issue of how specific the

first prong is meant to be is an issue that has troubled courts for some time.  See Tremblay v.

McClellan, 350 F.3d 195, 199-200 (1st Cir. 2003).  The level of specificity depends on the stage

of the proceedings at which a qualified immunity defense is brought.  Where as in the case at

---

[4]        However, the second and third prongs have occasionally been combined into one
step in this circuit.  See Tremblay v. McClellan, 350 F.3d 195, 199-200 (1st Cir. 2003).

bar, a qualified immunity defense is brought as a Fed. R. Civ. P. 12(b)(6) motion for failure to

state a claim upon which relief can be granted, the entire qualified immunity analysis, including

the first prong, must be based only on the facts stated in the complaint itself.  See, e.g., Butler v.

San Diego Dist. Attorney's Office, 370 F.3d 956, 963-64 (9th Cir. 2004).  At the 12(b)(6) stage,

the question on the first prong is whether, using all of the well-pleaded facts stated in the

complaint and viewing them in the light most favorable to the plaintiff, the plaintiff has stated a

claim for a violation of some constitutional right.  Riverdale Mills Corp. v. Pimpare, 392 F.3d

55, 61 (2004).  The first prong inquiry at this 12(b)(6) stage is unlikely to be very specific, given

that federal civil practice is based on notice pleading, where great specificity is not required,

Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

Applying these principles here, the facts detailed above, read in the light most favorable

to plaintiff, amply demonstrate that the DOC Defendants' conduct violated plaintiff's

constitutional rights.  The DOC Defendants do not try to defend the constitutionality of their

decisions to deny plaintiff complete copies of case law and written tributes to a poet.  The DOC

Defendants do not argue that the policies and regulations at issue here bear any relation to, or are

the least restrictive conditions necessary to achieve the purpose for which plaintiff is civilly

committed.  The DOC Defendants do not argue that plaintiff is being treated more considerately

and enjoys better conditions of confinement than individuals serving their criminal sentences.

The DOC Defendants do not argue that any penological interest was furthered by denying

plaintiff the materials sent to him by the law librarian at the Hampshire County Law Library and

his deceased brother.  And, the DOC Defendants do not try to show any reasonable relation

between their actions and any penological interest.  Instead, they argue that

> [b]y approving the Amended Management Plan that specifically incorporated the
> application of the inmate property and mail regulations to SDP's, the federal court
> has already approved these procedures as the least restrictive conditions necessary
> to achieve the purposes of commitment.

DOC Memo at 5, citing King v. Greenblatt, 53 F. Supp. 2d 117 (D.Mass 1999). The DOC

Defendants' also claim that "the principles of res judicata and collateral estoppel . . . bar any

claim that application of these regulations violates any federally protected right or requirement

that SDP's be held in conditions that constitute the 'least restrictive alternative' to achieve the

purposes of commitment." Id. at 6.

The DOC Defendants' arguments ignore the fact that the particular and arbitrary

restrictions on incoming mail they have used to contraband complete copies of case law, and / or

written tributes to a poet, were imposed on June 1, 2004,[5] and therefore not included in the

regulations approved by the court in 1999. Furthermore, as the DOC Defendants have

acknowledged in their Original Memorandum, p. 10, the federal court's decision in King v.

Greenblatt "does not preclude [plaintiff] from challenging events on the basis of constitutional or

other protected rights." 53 F. Supp. at 137. Plaintiff may undoubtedly challenge the DOC

Defendants' censorship of his mail by quantity, their unbridled discretion, and their specific

actions against plaintiff resulting in constitutional violations of his rights under the First and

Fourteenth Amendments and the Privileges and Immunities Clause of Article IV. See e.g.

Cameron v. Tomes, 990 F.2d 14 (1st Cir. 1993). These constitutional violations were committed

by the DOC after the termination of the consent decrees and the plaintiff's constitutional

challenges at issue here have not been litigated. King v. Greenblatt, supra.

---

[5]    See Third Supplemental Complaint, Exhibit K.

The second inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, supra, 533 U.S. at 201. The rights alleged to have been violated must be sufficiently particularized to put potential defendants on notice that their conduct is unlawful. Anderson v. Creighton, 483 U.S. 635, 640 (1987). There is no doubt that the DOC Defendants have been noticed that civilly committed individuals have the right to more considerate conditions of confinement than individuals serving their criminal sentences whose conditions of confinement are designed to punish. Youngberg v. Romeo, 457 U.S. 307, 321-322 (1982). There is no doubt that the DOC Defendants have been noticed that the conditions of confinement they impose on a civilly committed individual such as plaintiff, must "bear some reasonable relation to the purpose for which persons are committed." Seling v. Young, 531 U.S. 250, 265 (2001), citing Foucha v. Louisiana, 504 U.S. 71, 79 (1992); Youngberg v. Romeo, supra; and Jackson v. Indiana, 406 U.S. 715, 738 (1972). There is no doubt that the DOC Defendants are well aware of plaintiff's First and Fourteenth Amendment rights to access the courts and to freedom of speech, as they cite case law in their original memorandum in support of their motion to dismiss, and in their motion to dismiss plaintiff's third supplemental complaint, that spells out constitutional protections that even inmates serving criminal sentences are entitled to. See Turner v. Safley, 482 U.S. 78, 84 (1987); Thornburgh v. Abbott, 490 U.S. 401, 418 (1989); DOC Memo at 3, Original Memorandum of Law in Support of Defendants Robert Murphy, Kathleen Dennehy and Massachusetts Department of Correction to Dismiss the Complaint, Supplemental Complaint and Second Supplemental Complaint at p. 42. Given these facts, the limitations imposed on plaintiff here are so obviously unconstitutional that reasonable persons in the DOC

Defendants' shoes would have known they were violating plaintiff's First and Fourteenth

Amendment rights by their actions detailed above.

CONCLUSION

The issues in plaintiff's Third Supplemental Complaint are fundamental to the American

conception of a system of justice, for the United States Constitution guarantees to all persons the

right of access to the judicial system.  The courts -- as guardians of individual rights, have a

special responsibility to protect and enforce the right of equal access to the judicial system

because this right is the baseline for all other rights.  A lack of equal access to the courts harms

not only those persons who are excluded, but also the system itself, which is deprived of the

benefits of their inclusion.  In addition, the exclusion from the justice system of any segment of

society undermines public confidence in the system.  It therefore is imperative that the courts

ensure that individuals such as the plaintiff here, who has been indefinitely and involuntarily

civilly committed in a correctional facility and subjected to severe state oppression and state

indifference, is not excluded from participation because of the imposition of unique burdens and

arbitrary barriers to his access to the courts.

Moreover, it is firmly established that a significant impairment of First Amendment

rights must survive exacting scrutiny.  Buckley v. Valeo, 424 U.S. 1, 64-65 (1976); NAACP v.

Alabama, 357 U.S. 449, 460-461 (1958). "This type of scrutiny is necessary even if any deterrent

effect on the exercise of First Amendment rights arises, not through direct government action,

but indirectly as an unintended but inevitable result of the government's conduct. . . ." Buckley

v. Valeo, supra, at 65.  Thus encroachment "cannot be justified upon a mere showing of a

legitimate state interest." Kusper v. Pontikes, 414 U.S. 51, 58 (1973).  The interest advanced

must be paramount, one of vital importance, and the burden is on the government to show the existence of such an interest. Buckley v. Valeo, supra, at 94; Williams v. Rhodes, 393 U.S. 23, 31-33 (1968); Bates v. Little Rock, 361 U.S. 516, 524 (1960); NAACP v. Alabama, supra, at 464-466; Thomas v. Collins, 323 U.S. 516, 530 (1945).

The regulations at issue here are excessive, unreasonable, and unconstitutional. Accordingly, plaintiff respectfully requests this Court deny the DOC Defendants' Motion to Dismiss the Third Supplemental Complaint, and grant him declaratory, injunctive and pecuniary relief.

Dated:                                                Respectfully submitted,
                                                       By His Attorney:


                                                       /s/ John G. Swomley
                                                       John G. Swomley, BBO # 551450
                                                       Swomley & Associates
                                                       227 Lewis Wharf
                                                       Boston, MA 02110
                                                       Tel. 617-227-9443
                                                       Fax. 617-227-8059
                                                       jswomley@swomleylaw.com

                          Certificate of Service

I hereby certify that I caused a copy of the within document to be served by first class mail, postage pre-paid as follows: (1) Mary P. Murray, counsel for Defendants Massachusetts Department of Correction, Kathleen Dennehy and Robert Murphy, 30 Administration Road, Bridgewater, MA 02324; and (2) Kevin Mulvey, counsel for defendants Pushkina and O'Donnell, Mulvey & Sneider, LLP, 1622A Beacon Street, Brookline, MA 02446-2201.

                                                       /s/ Danielle Andreasi
                                                       Danielle Andreasi


Dated: