UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------X

JOEL PENTLARGE,             :
    Plaintiff           :
 
v.                          :    CIVIL ACTION NO. 04-30177-PBS

ROBERT MURPHY, et al.       :
    Defendants          :

------------------------------------------------------X

MOTION FOR WRIT OF HABEAS CORPUS

Plaintiff, Joel Pentlarge, hereby moves this Honorable Court for a writ of habeas corpus, requiring the Commonwealth to produce him for oral argument in the above-captioned matter, scheduled to be heard on September 28, 2005. As grounds therefore, plaintiff states the following:

1. Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 et seq., forbids discrimination by public entities against persons with disabilities in public services, programs, and activities.[1] 42 U.S.C. § 12132. As Congress instructed, the United States Attorney General issued regulations implementing provisions of Title II, including the discrimination proscription contained in section 12132. See 42 U.S.C. 12134(a). The so-called "integration regulation," reads:

A public entity shall administer services, programs, and activities in the most integrated

---

[1] The ADA defines "disability with respect to an individual," as (A) a physical or mental impairment that substantially limits one or more of the major life activites of such individual; (B) a record of such an impairment, or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). "Public entity" is defined in pertinent part as: (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government. 42 U.S.C. § 12131.

setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d) (1998). The preamble to the Attorney General's Title II regulations defines "the most integrated setting appropriate to the needs of qualified individuals with disabilities" to mean "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. A, p. 450 (1998). Another regulation promulgated by the Attorney General requires public entities to "make reasonable modifications" to avoid "discrimination on the basis of disability," unless those modifications would entail a "fundamental alteration." The so-called "reasonable-modifications regulation," provides:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7) (1998). See Olmstead v. L.C., 527 U.S. 581, 592 (1999).

In Olmstead v. L.C., the United States Supreme Court held that "unjustified isolation" is "properly regarded as discrimination based on disability."[2]

> Recognition that unjustified isolation of persons with disabilities is a form of discrimination reflects two evident judgments. First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life. [Internal citations omitted]. Second, confinement in an institution severely diminishes the everyday life activities of individuals . . . .

---

[2] Plaintiffs L.C. and E.W. had been respectively diagnosed with schizophrenia and a personality disorder. In holding that the anti-discrimination provision contained in Title II of the ADA required placement of persons with mental disabilities in community settings rather than in institutions, where the State's treatment professionals had determined that community placement was appropriate, the transfer to a less restrictive setting was not opposed by the affected individual, and the placement could be reasonably accommodated taking into account the resources available to the State and the needs of others with mental disabilities, the U.S. Supreme Court found that the ADA specifically identified unjustified "segregation" of persons with disabilities as a "form of discrimination," see 42 U.S.C. §§ 12101(a)(2), 12101(a)(5). 527 U.S. at 587.

527 U.S. at 600-601.

In <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), the United States Supreme Court remained similarly faithful to the ADA's demand for reasonable accommodation to secure access and avoid exclusion, holding that Title II not only seeks to enforce a prohibition on irrational disability discrimination, but also seeks to enforce a variety of other basic constitutional guarantees -- specifically, the right of access to the courts, which is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. <u>Id.</u>

> The Due Process Clause and the Confrontation Clause of the Sixth Amendment, as applied to the States via the Fourteenth Amendment both guarantee to a criminal defendant such as respondent[] the 'right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.' <u>Faretta v. California</u>, 422 U.S. 806, 819, n.15 (1975). The Due Process Clause also requires the States to afford certain civil litigants a 'meaningful opportunity to be heard' by removing obstacles to their full participation in judicial proceedings. <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379 (1971); <u>M.L.B. v. S.L.J.</u>, 519 U.S. 102 (1996).

<u>Tennessee v. Lane</u>, <u>supra</u>, 541 U.S. at _; 158 L.Ed. 2d at 837.

2. On July 19, 2004, plaintiff was adjudicated a sexually dangerous person by reason of a mental abnormality and civilly committed to the Massachusetts Treatment Center. <u>See</u> G.L. c. 123A, §§ 1, 14. As such, plaintiff submits that he is a disabled person within the meaning and protection of Title II of the Americans with Disabilities Act; and consequently, that he is entitled to Title II's protections, including the guarantee that he shall have access to the courts. 42 U.S.C. §§ 12131 et seq. <u>See</u> <u>Atwood v. Vilsack</u>, 338 F. Supp. 2d 985 (S.D. Iowa 2004).[3] As

---

   [3]   Atwood et. al., plaintiffs subject to civil commitment as sexually violent predators under Iowa Code § 229A.1 (2004), alleged discriminatory treatment contravening the ADA based on conditions of confinement that were more restrictive than necessary and also more restrictive than those provided to other non-disabled persons in equivalent circumstances. While acknowledging that plaintiffs' claims for monetary damages pursuant to the ADA may be barred by the doctrine of sovereign immunity, the court did grant the plaintiffs summary judgment on the issue of conditions of confinement. The court found no discernible legitimate governmental objective that was reasonably related to the specific conditions of confinement imposed on

demonstrated above, due process requires at a minimum that, where as here, plaintiff is forced to settle his claims of right through the judicial process, he is entitled to a meaningful opportunity to be heard.

In <u>Faretta v. California</u>, <u>supra</u>, 422 U.S. at 819-820, the United States Supreme Court recognized that

> [t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation -- to make one's own defense personally -- is thus necessarily implied by the structure of the Amendment. [Internal footnote ommitted]. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

In the case at bar, plaintiff has two matters scheduled for hearing on September 28, 2005 -- the first is a hearing on all pending motions in the above-captioned case, including defendants' Motions to Dismiss and plaintiff's Motions for Preliminary Injunction. The second is a hearing on plaintiff's motion to consolidate his case for trial, pursuant to Federal Rule of Civil Procedure 42(a), with that of plaintiff Jeffrey Healey on the grounds that these two actions involve common parties and common questions of law and fact.[4] Denying plaintiff the opportunity to be present at, and therefore participate fully in these judicial proceedings, would deny him due process and

---

plaintiffs, i.e., keeping them in lockdown the majority of the day, denying them reasonable access to visitors, telephone privileges, educational programming, mental health treatment, recreation, exercise, religious services, medical care, and hygiene. Accordingly, the court inferred that the purpose of the restraints upon plaintiffs were punishment and thus, did not comply with the requirements of due process, citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 (1979) ("if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment . . . ."). <u>Atwood v. Vilsack</u>, <u>supra</u>, 338 F. Supp. at 1002-1005.

[4]     See <u>Jeffrey Healey v. Robert Murphy, et al.</u>, United States District Court of Massachusetts, Civil Action No. 01-11099-NG.

violate his rights under Title II of the ADA. Such a restriction would be arbitrary, purposeless, and not reasonably related to any legitimate governmental objective; and thus would be punishment in contravention of the United States Constitution. See Seling v. Young, 531 U.S. 250, 265 (2001) "[D]ue process requires that the conditions and duration of confinement under the [civil commitment] Act bear some reasonable relation to the purpose for which persons are committed. Foucha v. Louisiana, 504 U.S. 71, 79 (1992); Youngberg v. Romeo, 457 U.S. 307, 324 (1982); Jackson v. Indiana, 406 U.S. 715, 738 (1972)." Moreover, federal law has long recognized that individuals who have been civilly committed have a due process right to "reasonably nonrestrictive confinement conditions." Youngberg v. Romeo, 457 U.S. 307, 324 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). Id. at 321-322.

## CONCLUSION

Plaintiff's right of access to the courts is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and he is entitled to a "meaningful opportunity to be heard." Therefore, any obstacle to his full participation in judicial proceedings must be removed. See Tennessee v. Lane, 541 U.S. 509 (2004); Boddie v. Connecticut, 401 U.S. 371, 379 (1971). For all these reasons, plaintiff respectfully moves this Honorable Court to order the Commonwealth to produce him for oral argument scheduled to be heard in the above described matters on September 28, 2005.

Dated: September 20, 2005            Respectfully submitted,
                                     By His Attorney


                                     /s/ John G. Swomley
                                     _____
                                     John G. Swomley, BBO # 551450
                                     Swomley & Associates
                                     227 Lewis Wharf
                                     Boston, MA 02110
                                     Tel. 617-227-9443