UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOEL PENTLARGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-30177-NG |
| ROBERT MURPHY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON MOTION OF DEFENDANTS PUSHKINA AND O'DONNELL TO DISMISS

February 28, 2006

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff Joel Pentlarge ("Pentlarge") has been civilly committed to Nemansket Correctional Center (the "Center") for one day to life pursuant to Mass. Gen. Laws ch. 123A after pleading guilty to, and serving a prison sentence for, five counts of statutory rape involving four fifteen year old boys. He originally brought this multi-count action pursuant to 42 U.S.C. § 1983 against the Massachusetts Department of Corrections and its officers[1] (collectively, the "DOC Defendants") challenging various conditions at the Center. The crux of Pentlarge's complaint is that the conditions at the Center are more restrictive and punitive than the conditions in the prisons where he previously completed his prison sentences, in violation of his Fourteenth Amendment rights and the

---

[1] The defendant Robert Murphy is the Superintendent of the Center and the defendant Kathleen Dennehy is the Commissioner of the Department of Corrections.

Americans with Disabilities Act. The DOC Defendants have moved to dismiss the claims against them. Those motions to dismiss are still pending and are not the subject of this decision.

Pentlarge filed an Amended Complaint (Docket No. 4) adding claims against the librarian at the Center, Natalya Pushkina ("Pushkina"), and her supervisor, Deborah O'Donnell ("O'Donnell") (collectively, the "Library Defendants"). In this Amended Complaint ("Compl."), Pentlarge alleges that the conduct of these defendants on three specific occasions violated his "First Amendment rights of freedom of expression, freedom of the press, and to seek redress of grievances, and the plaintiff's rights under the Fourteenth Amendment to access to the courts, particularly this court." Compl. ¶ 109. The Library Defendants have moved to dismiss the complaint against them pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that it fails to state a claim upon which relief can be granted. For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss (Docket No. 54) be ALLOWED.

## II. STATEMENT OF FACTS

In considering a motion to dismiss, the court must accept all well-pleaded averments in the complaint as true, and will read the complaint in the light most favorable to the plaintiff. See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999); Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987). Applying these principles to the instant case, the relevant facts are as follows.

## **Regulatory Framework**

The claims against the Library Defendants arise out of the refusal to photocopy materials on three occasions. It is undisputed that the relevant regulations governing photocopying at the Center are found in 103 C.M.R. 478.11(4).[2] The DOC regulations in effect at the relevant time[3] provide in relevant part as follows:

> 4.   <u>Photocopies</u>
>
> (a)   Photocopying services shall be for the purpose of duplicating <u>original legal documents</u> and for the purpose of increasing access to the legal collection. The Superintendent shall designate the staff members responsible for photocopying legal documents and legal reference materials.
>
> (b)   All photocopy requests shall be compiled within reasonable amounts at no charge. In order to provide photocopying services to all inmates, the Superintendent may establish guidelines and limits, subject to the review of the Commissioner or his/her designee.

(Emphasis added). <u>See</u> Pl. Mem. at 37.

---

[2] While Pentlarge notes that the defendants have only cited case law relating to prisoners, and do not address "the 'more considerate' treatment that the plaintiff is entitled to as a civilly committed person," he does the same. <u>See</u> Plaintiff's Memorandum of Law in Opposition to the Motions to Dismiss of All the Defendants (Docket No. 67) ("Pl. Mem.") at 3-7. Moreover, Pentlarge goes on to argue that if the "defendants had simply complied with this [DOC] regulation which applies to all prisoners in DOC custody, they would not have been subject to this litigation." <u>Id.</u> Thus, it is clear that unlike the claims against the DOC Defendants, which challenge the constitutionality of the conditions under which Pentlarge is confined as a civilly committed person, as opposed to a prisoner, Pentlarge's claims against the Library Defendants are not premised on his status at the Center.

[3] The regulations have been amended but the modifications are not relevant to the instant dispute.

Section VII of the Massachusetts Treatment Center Procedural Attachment to 103 C.M.R. 478 provided in relevant part as follows:

> Section VII: <u>Legal Copying</u>: Original legal material will normally be copied Monday through Friday depending on staff availability and/or supplies.
>
> Section VII(f): A maximum of four (4) copies of each personal legal material may be copied. The only exception will be when legal necessity requires a specific number. Legal book material will not be copied. Blank forms will not be copied.

<u>See</u> Answer of Defendants and Motion to Dismiss (Docket No. 54) ("Motion") at 5.

### The Incident of September 17, 2004

On September 17, 2004, Pentlarge brought a "Notice of Lawsuit" form to the Library to be copied. Compl. ¶ 100. Pushkina, after consultation with O'Donnell, refused to copy it because the defendants' names had been pasted over other names. <u>Id.</u> at ¶¶ 101-103. The document constituted an "altered legal document" and not an original document according to the Library Defendants. <u>Id.</u> at ¶ 103.

### The Incident of September 7, 2004

In connection with filing the complaint in this action, Pentlarge requested that the Library Defendants make copies of the complaint "for the original defendants, several attorneys and reporters for the Boston Globe, the Springfield Republican and the Ware River News." <u>Id.</u> at ¶ 105. The Library Defendants, however, refused to make copies for the reporters.

**The Incident of September 2, 2004**

On September 2, 2004, Pentlarge wrote a letter to the Superintendent, enclosing a copy of the case of Young v. Seling, 72 Fed. Appx. 657 (9th Cir. 2003). Id. at ¶ 107. Pentlarge requested that the Library Defendants make a copy of the letter for his attorney, John Swomley. Id. While the Library Defendants apparently made a copy of the letter, they refused to make a copy of the Young v. Seling decision. Id.

### III. ANALYSIS

#### A. Standard of Review - Motion to Dismiss

In ruling on a motion to dismiss, the court must view the factual allegations contained in the complaint in the light most favorable to the plaintiffs, and may grant dismissal "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Roeder, 814 F.2d at 25 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957)). While the court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs," Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), it "need not credit a complaint's bald assertions or legal conclusions." Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (internal quotations and citation omitted). "When a *pro se* complaint sets forth the facts upon which relief is sought, and a lenient construction demonstrates beyond doubt that the plaintiff can prove no set of facts to support [his] claim for relief, the complaint will be subject to dismissal

pursuant to Fed. R. Civ. P. 12(b)(6)." Rockwell v. Cape Cod Hosp., 26 F.3d 254, 260 (1st Cir. 1994).

### B. Standard of Review - 42 U.S.C. § 1983

Pentlarge is seeking recovery under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quotations and citation omitted). It states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir.), cert. denied, 522 U.S. 819, 118 S. Ct. 71, 139 L. Ed. 2d 32 (1997). In the instant case, there is no dispute that each of the Library Defendants was acting in her official capacity at all relevant times and was therefore acting under color of state law. However, the defendants dispute that any of their conduct deprived Pentlarge of his constitutional rights. This court agrees, and, therefore, recommends that the complaint against the Library Defendants be dismissed.

### C.     The Alleged Constitutional Violations

#### 1.     Lack of Access to the Courts

It is beyond dispute that as a person incarcerated Pentlarge has a constitutional right to have meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494 (1977). It is "essential" that any program provided for prisoners "be effective in providing inmates with the ability to file petitions and complaints with a court, thus providing those inmates with 'meaningful access' to the judicial system." Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986). Here, Pentlarge has failed to meet his burden of establishing a prima facie case of lack of access. See id. at 436. Absent an injury-in-fact, Pentlarge cannot establish his claim that his constitutional right to meaningful access to the court was violated. Lewis v. Casey, 518 U.S. 343, 351-52, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996) (actual injury must be established to sustain a claim of denial of meaningful access to the courts).[4]

None of the challenged events deprived Pentlarge of his right to litigate a grievance or to have meaningful access to the courts. Thus, the defendants' refusal to copy the altered Notice was consistent with the regulations authorizing the copying of original legal documents. Pentlarge was apparently able to proceed with his lawsuit since

---

[4] "[W]here the challenge is systemic, embracing the basic adequacy of materials and legal assistance made available to all or subgroups of the prison population" or "the conditions challenged obviously go the heart of any meaningful access to libraries, counsel, or courts," no actual injury may be needed. Ferreira v. Duval, 887 F. Supp. 374, 381 (D. Mass. 1995) (quoting Sowell v. Vose, 941 F.2d 32, 34-35 (1st Cir. 1991) (internal punctuation and citations omitted)). No such widespread conditions are at issue here.

this case is pending, and, therefore, the implementation of this regulation caused him no harm. See Guglielmo v. Cunningham, 811 F. Supp. 31, 36 (D.N.H. 1993) (no violation of First Amendment "right to litigate to redress civil wrongs" or "fundamental constitutional right of access to the courts" where litigation was proceeding). Similarly, the failure of the Library Defendants to copy a published decision to send to Pentlarge's attorney, who clearly had access to the case, simply did not hinder Pentlarge's efforts to pursue his legal claim. See Lewis, 518 U.S. at 351, 116 S. Ct. at 2180 (inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"). Obviously, the fact that copies of Pentlarge's complaint were not made for members of the press, who could easily obtain copies from the court, did not compromise Pentlarge's ability to litigate his claim. Therefore, Pentlarge has failed to establish a violation of his constitutional rights.[5]

### 2. Access to the Press

To the extent that Pentlarge is claiming that the failure to provide copies of his complaint to reporters violated his constitutional rights, this claim must fail as well. The complaint does not indicate that Pentlarge's ability to communicate with the press was limited in any way. He was free to write to any press members — the only limitation was

---

[5] Since there is no constitutional violation, the court does not need to reach the issue whether the "challenged regulations bear a rational relation to legitimate penological interests." Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003). This court does note, however, that courts "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id.

that the library would not copy publicly available materials to be included in the correspondence. In light of Pentlarge's unfettered access to the media, there was no violation of his constitutional rights. See Pell v. Procunier, 417 U.S. 817, 824, 94 S. Ct. 2800, 2805, 41 L. Ed. 2d 495 (1974) (limitation on prisoners' face to face meeting with media upheld in light of alternative methods of communication, including mail).

### 3. The Existence of Alternatives

Pentlarge argues that because his First Amendment rights were being restricted, the defendant must show that there was no less restrictive alternative available, citing Reno v. Am. Civil Liberties Union, 521 U.S. 844, 874, 117 S. Ct. 2329, 2345-46, 138 L. Ed. 2d 874 (1997). See Pl. Mem. at 38. Reno, however, dealt with provisions of the Communications Decency Act seeking to protect minors from "obscene" material on the Internet. These regulations were found to be content-based restrictions on speech, and, because of the "breadth of this content-based restriction of speech," the government faced "an especially heavy burden . . . to explain why a less restrictive provision would not be as effective." Reno, 521 U.S. at 879, 117 S. Ct. at 2348. In the instant case, there was no content-based restriction on Pentlarge's communications, and the "least restrictive alternative" analysis is inapplicable.

Pentlarge argues that he should have access to a coin-operated photocopier. Whether or not to allow such access is clearly within the authority of the Center's administration. Since there was no violation of Pentlarge's constitutional rights by the

Library Defendants, however, the fact that other institutions may allow such access is irrelevant to the claims against Pushkina and O'Donnell.

## IV. CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss filed by the defendants Natalya Pushkina and Deborah O'Donnell (Docket No. 54) be ALLOWED.[6]

                     / s / Judith Gail Dein
                     Judith Gail Dein
                     United States Magistrate Judge

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).